## JACKS VS. DYER et al.

1. BILL OF EXCEPTIONS.

   Where the evidence is not embodied in the bill of exceptions, but reference is made therein to the pages of the transcript upon which it is entered, it is sufficient, though the better practice is to embody it in the bill of exceptions.

2. EJECTMENT; EVIDENCE.

   In ejectment, proof of possession, under claim of title by the plaintiff's ancestor, is sufficient to entitle plaintiff to recover, unless the defendant shows a better title.

3. DOWER; TRANSFER BEFORE ASSIGNMENT, EVIDENCE, ETC.

   The widow cannot transfer her estate by dower in the land of her deceased husband before the same has been set apart to her; and a deed executed by her before assignment of dower, is not admissible in evidence to establish title in her vendee.

4. TAXES: *Lien for; Sale by ex-collector, etc.*

   Under the provisions of sec. 105, Ch. 148, Gould's Digest, the lien of the State and county for taxes was transferred to the collector, who should pay the same, with power to collect such taxes for three years after payment, notwithstanding the expiration of his term of office. By an act approved the 13th of March, 1867, the time was extended one year. It is questionable whether the Legislature had power to extend the time during which the officer could act, or the lien on the property charged with the taxes, so as further to encumber it.

5. ——————: *Same.*

   The power to sell under this act depended upon the pre-existing fact that the collector had settled with the State and county officers, and paid all the taxes due for the particular year for which the taxes were charged, within the time prescribed by law, and had settled the particular tax which he failed to collect; the remedy provided by the statute must be strictly pursued.

6. TAX DEED: *When void.*

   Where a tax deed, under a sale of land for the non-payment of taxes for the years 1859, '60 and 61, does not recite the assessment of the land for those years, but shows that the assessment was made and filed in 1867, the deed is void, and cannot be cured by parol evidence. (For other irregularities which will vitiate the sale, see the opinion.)

7. ——————: *Power of clerk to make tax deed.*

   The clerk had no power to execute a deed to land sold for non-payment of taxes, under the provisions of sec. 105, Ch. 148, Gould's Digest. The act authorizing him to execute tax deeds did not relate to that class of sales.

8. ————: *Effect of purchase at tax sale by one claiming title.*

One who buys land at tax sale to which he claims title, does not thereby strengthen his title, but only removes the incumbrance created by the non-payment of taxes.

9. EJECTMENT: *Rents and profits.*

Upon a recovery in ejectment, the plaintiff is entitled to judgment for rents and profits during the time the defendant was in possession.

10. ————: *Improvements by defendant.*

A defendant in ejectment, who claims under a tax title, also under a conveyance from a third party, and who made improvements before the tax title accrued, cannot recover the value of his improvements from the plaintiff.

APPEAL from *Phillips* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Hornor*, for appellant.

*Brown*, contra.

WALKER, J.:

The appellees brought an action of ejectment in the Phillips Circuit Court, against James Summers, to recover possession of a lot of land in the city of Helena, and for damages for the use and occupation of the same. The case was submitted to a jury, who, upon the evidence and instructions of the court, found a verdict for the plaintiffs, from which the defendant appealed to this court.

The counsel for the appellees contend that the evidence upon which the case was determined in the court below is not brought before us by bill of exceptions. It is true that the evidence was not (as it should have been) embodied in a bill of exceptions, but a reference is made to each page of the record upon which written and parol evidence was entered; it is quite probable that the counsel who prepared the bill of exceptions, as well as the judge who signed it, referred the clerk to the pages upon which the evidence was to be found, with instructions that it might be appropriately placed in the bill of exceptions; the judge certifies

that it is all the evidence in the case; we find the references sufficient to enable us to ascertain what the evidence was before the jury, and will proceed to an investigation of the case upon its merits.

The plaintiffs claim title to the lot of land in controversy as heirs at law of Pleasant Dyer, deceased. After proving that the original plat of the city of Helena was neither in their possession nor under their control, they offered, and introduced in evidence, a certified copy of the plat of the town of Helena, from the recorder's office of the county of Phillips, and, also, an unbroken chain of title, by deed, from the original proprietors of the town to Pleasant Dyer, their father, and that he resided upon the lot with his family, and died in the actual possession of it, and that plaintiffs were his sole children and heirs at law.

The first question to be considered is: was this sufficient evidence of legal title in the plaintiffs to entitle them to recover? Defendants contend that it is not, but that, in order to entitle plaintiffs to recover, it was necessary for them to show a chain of title from the Government of the United States to their ancestor.

It is very true, that in ejectment the plaintiff must show title in himself; and it is also true that, in some instances, it is found necessary, in contest for superior title, that the plaintiff should trace his title to the government, the source of title, but it by no means follows that in every instance a plaintiff in ejectment is required to make such proof, as, for instance, where the plaintiff and defendant claim to have derived title from the same source, it is not necessary for either party to trace title beyond that under which they claim; nor is it necessary, when the plaintiffs assert title under an ancestor who died in possession of land in the first instance, to trace their title further. In such case, a presumption of title is raised in favor of the heir, which must prevail

until rebutted by proof of superior title in the defendant. Adams' Equity, 281 ; *Carnall* v. *Wilson*, 21 Ark., 62.

In the case under consideration, plaintiffs claim, as heirs of Pleasant Dyer, who died in possession of the lot in controversy, and it was not strictly necessary for them to have introduced evidence of a chain of title from the proprietors of the town to their ancestors; proof of such actual possession, under a claim and color of title, was sufficient to entitle the plaintiffs to recover until a better title was shown by defendants.

The title set up by defendants is derived from T. M. Jacks, who claimed to have purchased of the widow of Dyer, and also of a purchase of the lot, at tax sale, by Jacks.

As regards the quit-claim deed, from Striker and wife to Jacks, the wife being the widow of Dyer, the only interest which either of them could have, was the dower interest of the wife, which, never having been set apart to her as such, was not transferable. *Carnall* v. *Wilson*, 21 Ark., 62; *Jackoway* v. *McGarrah*, id., 347. The deed from Striker and wife was, therefore, properly excluded from the jury.

The defendant also offered to give in evidence, a deed executed for the purchase of the lot at tax sale, and at the same time offered to prove by parol, that the collector of taxes for the years 1859, 1860 and 1861 had paid the taxes on the lot for each of those years, but the court refused to admit such evidence, or the tax deed to be given in evidence.

The correctness of this decision presents the most material question to be determined.

From the recitals in the deed, it appears that the sale of the lot was made in December, 1868, by an ex-collector of taxes, for the taxes due for the years 1859, 1860, 1861, which taxes are claimed by the then collector to have been paid by him. The 105th section, Ch. 148, Gould's Digest, provides that " every

*Vol. xxxi.—22.*

collector who shall pay into the State and county treasury the full amount of State and county tax with which he may stand charged, on or before the time prescribed by law, shall have the same lien upon the property chargeable with taxes advanced by him, as the State or county would have if the taxes remain unpaid, and may proceed to collect the same for three years after such payment, in the same manner as other taxes are collectable, notwithstanding his term of office may have expired."

As the sale, in this instance, was made in 1868, it necessarily follows that it was after the expiration of three years, and was made under an extension of the time for one year given under the act of March 13th, 1867. It might be a question of grave consideration, whether the Legislature had power to extend the term of office, fixed by law, and under which the officer was commissioned and qualified to act, and whether, after the time given under the first act had expired, a subsequent Legislature could renew and extend it for a longer time.

In the case of *Hogan* v. *Brashears*, 13 Ark., 242, a sale of land was made by a sheriff after his term of office had expired; it was held, that such sale was void.

In *Twomly* v. *Kimbrough*, 24 Ark., 459, the decision of the case of *Hogan* v. *Brashears* was approved; but it was, in the latter case, held, that where a sheriff, after making a levy, goes out of office, he may proceed to sell, although his term of office had expired; and it is also questionable whether the lien which the State had upon the lot for the payment of the taxes assessed, and which was transferred by legislative enactment to the collector, could be extended by a subsequent act of the Legislature so as to further incumber the property assessed for taxation with such lien. The act which authorizes the collector to collect the taxes so paid, confers upon him the same power to collect which the State would have had, had the taxes remained unpaid; that

is, as other taxes are collected by the State. In order to make a valid collection, the property must be regularly assessed, the assessment extended on the tax book, to which is attached a warrant issued by the clerk. Gould's Digest, sec. 50.

Where the land belongs to a resident of the county (which was the case in this instance), sale is made under the provisions of sec. 107 Gantt's Digest, Ch. 148; which provides, "that each collector, on the failure of any resident of his county to pay the taxes with which he.may be charged on the tax book, if there is not personable property, shall levy on and sell the land or town lot charged with the payment of such tax, in the same manner as lands are levied upon and sold under execution; the time of sale is the second Monday of March in each year, at the court house door of the county."

Section 111 provides, that such collector shall make a deed to the purchaser; this statute was in force when the collector paid the taxes, as well as when the sale of the lot was made; it was a special power conferred by statute for a particular purpose, and the right to exercise it depended upon the pre-existing facts, that he had settled with the State and county officers, and paid all the taxes due for that year, within the time prescribed by law; and that, in such settlement, he settled the particular tax which he failed to collect; he must do this in order to bring himself within the provisions of the act, and must strictly pursue the remedy in accordance with the power conferred. Blackwell, in his work on Tax Titles, p. 49, says: Where a statute creates a new power, and, at the same time, provides the means and mode of executing it, those to whom the power is entrusted can execute it only in the mode prescribed; but the question is, has such been the case in this instance? It is recited in the deed that, on the 9th day of March, 1868, James A. Bush was assessor, and Bart W. Green was late sheriff and collector of taxes for Phillips County; that the lot 470, in Old Helena, in said county, was

entered, listed and assessed for taxation in the name of Pleasant Dyer, a resident of said county, agreeably to the laws of the State regulating the collection of taxes ; that on the fourth Monday of December, 1867, said late sheriff and collector made out and filed in the clerk's office of the County Court an accurate list of all the lands and town lots in said county, owned by persons who resided therein, on which the taxes had not been paid, setting forth the owners' names, and the description of the lands and town lots described in the tax book, with the amount of taxes due thereon for the years 1859, 1860, 1861, having paid the State and county tax assessed, in pursuance of said laws, amounting to the sum of $6.17, due on said lots for the years 1859, 1860, 1861, within the time prescribed by law, there being no personal property ; therefore, Bart W. Green, late sheriff and collector for the county of Phillips, advertised said lots for sale, to be sold at auction on the 9th day of March, 1868, at the court house door, Helena, Arkansas, for the payment of said taxes, the names of the owner and the penalty due, and that the taxes remained unpaid, and that, as such sheriff and collector, on the 9th of March, 1868, he sold the lot at public sale; that it was purchased by Thomas M. Jacks for $7.92.

These are the substantial recitals in the deed, and in consideration of which, Samuel J. Clark, clerk of said county, granted, bargained and sold said lot to Thomas M. Jacks.

Admitting all the recitals in the deed to be *prima facie* evidence of the regularity of the proceedings, they fall far short of showing a valid sale.

Blackwell, p. 48, says, "As a matter of policy, tax sales should not be sustained, unless the laws are shown to be complied with ;" on page 49, "that the power to sell, can only be executed in the mode prescribed, upon a rigid adherence to the directions and forms which the legislature has seen proper to lay down for the government of its agents." In the case of *Hogan* v. *Brashears,*

13 Ark., 242, the necessary recitals to uphold a tax deed, were fully discussed. Mr. Justice Scott, who delivered the opinion of the court, when considering this question, said: "The party who sets up title, must furnish evidence necessary to sustain it, when, for this purpose, he relies upon a tax collector's grant whose authority is not general, but limited, both in the mode, and scope of its exercise ; to sustain its operative force as such, he must exhibit all of the substantial pre-requisites to his authority to make the grant." In our subsequent decisions, this rule has been approved and adopted.

Keeping this rule in view, we find no recital in the deed under consideration showing that the lot sold was assessed in the years 1859, 1860, and 1861, for taxation ; the recital is, that the assessment was made in 1867, and on the fourth Monday in December, of that year, was filed in the clerk's office with other lands and lots for taxation. An assessment in 1867, conferred no power of sale of the lot, for the taxes assessed for 1859, 1860 and 1861 ; it was the assessment made then, which created an obligation on the owner to pay.

Blackwell, p. 114, says: "That listing and valuation of the land for taxation, within the time, and in the manner required by law, is essential to the validity of the tax, one which cannot, under any circumstances, be dispensed with."

Cooley on taxation, p. 253, says: "Assessment is an indispensable proceeding in the establishment of any individual charge against either the person or property." In the case of *Gossett* v. *Kent*, 19 Ark., p. 602, Mr. Justice English, when considering the effect of an assessment completed by the action of the County Court, held that it was in effect a judgment, and the warrant attached to the tax book, in its nature, an execution. It was this assessment which imposed an obligation upon Dyer, to pay the taxes, and it was his liability to pay, which, alone,

authorized the collector to advance the taxes for him; and because this recital was not made, the deed was utterly void.

In this particular case, it was a necessary pre-requisite to the right to collect the amount so advanced, to recite and prove, that the collector had fully settled and paid, all the State and county taxes due to the State and county, for the years 1859, 1860 and 1861, within the time prescribed for settlement in each of these years, and that in such settlement, he had advanced the taxes upon the lot of Dyer; because it was upon this condition alone that the lien, which the State held upon the lot, was continued in favor of the collector. These recitals become necessary, not under the general law in regard to the sale of land for taxes, but under the special power conferred upon the collector who had advanced taxes.

Upon comparing the recitals in the deed with the Statute, it will be found that they were not made under the 107, 108 and 111 sections of Gould's Digest, which provides for the sale of resident tax payers land, but that it is almost a literal recital of of 115th section of Gould's Digest, which relates alone to the collection of taxes on the lands of non-resident tax payers.

It was under this section, that the taxes due for the current year of 1867, and the preceding years were entered on the tax book for collection; such entry was not provided for under the provision for the sale of residents' lands; it was not a strict compliance, indeed no compliance whatever with the law, authorizing the sale of lands of resident tax payers, and for this reason, also, the deed was fatally defective.

The recitals in the deed that the lot was sold, and a certificate for the purchase had been given to the purchaser, Jacks, are in conformity with section 124 Gould's Digest, which relates to sales of non-residents' lands alone. No day is given for redemption of residents' lands sold for taxes. Under the provisions of the

111th section, the sheriff and collector was required to sell and make deed to the purchaser; it was a special power, and one which he alone could perform.

The clerk of the court who seems to have executed the deed, had no power to do so, he was not the successor in office to the ex-collector, all of the powers conferred upon the clerk were given under a subsequent statute, one which changed the time and manner of sale, and gave day for redemption to the owner of the land, in default of which, as clerk, upon the presentation of the purchase certificate he was authorized to execute a deed to the purchaser.

Without pursuing an investigation as to other irregularities in the deed, we feel satisfied that upon each of these grounds the deed was properly excluded from the jury, as evidence so fatally defective that if the parol evidence proposed to be introduced had been admitted, such defects would not have been cured.

The remaining questions arise upon the action of the court in regard to the improvements placed upon the lot by the defendant, and the rents and profits claimed by the plaintiffs.

According to the facts presented, the assessor was remiss in his duty in the assessment of this lot for the years 1859, 1860 and 1861.

The assessment appears to have been made in the name of Pleasant Dyer, when in fact he died in 1857, several years before such assessment. On the 6th day of May, 1861, the widow of Dyer, who, in the meantime, married Slinker, conveyed the lot to Jacks, who entered upon it, held and claimed it as his own until the 24th September, 1866, at which time he conveyed the lot by deed to defendant Summers, who entered and held it in 1867, when it was again assessed as the property of Dyer who had been dead for ten years. All the while from the purchase of Jacks in 1861, this lot was held by Jacks and Summers under

him, under the deed from Slinker and wife to Jacks, and not under a tax title; the purchase of the lot by Jacks at tax sale was made after his sale to Summers, and was evidently intended to quiet his previously acquired title. In point of fact when the taxes of 1861 became due and were paid by the collector, Jacks and not Dyer was properly chargeable with the taxes. He acquired title to the lot with the incumbrance of all the taxes upon it, and, when bought in for taxes, did but remove such incumbrance.

It is well settled that one who redeems lands forfeited for the non-payment of taxes, acquires thereby no additional title to it, and so one who buys land at tax sale to which he claims title, which was incumbered with taxes, acquires no additional title, but only removes such incumbrance.

Such being the title under which defendants claim, the question is, did the court err in the instructions given to the jury?

At the instance of the plaintiff the court instructed the jury that if they should find from the evidence that the plaintiffs were entitled to the possession of the lot, they may find them entitled to the rents and profits, accruing from the possession of the same by defendant Summers.

This instruction was given; to the giving of which the defendants excepted. This was the only instruction bearing upon this question, and was properly given. It was shown by the evidence the length of time the lot was in the possession of Summers, and the value of the rents. The instructions asked by the defendants and refused by the court, relate to the proof necessary to entitle the plaintiff to recover, and were properly overruled, from the view which we have already taken, as to the necessary proof to entitle the plaintiffs to recover; the instructions were properly refused.

The defendant Summers claimed that after his purchase of the lot, he had made valuable improvements upon it, and offered to

prove the value of such improvements; he was himself the witness by whom it was expected to make such proof, and by consent made a statement of what he proposed to prove, which was that the improvements were made in 1867 and 1868, and were worth $750. Such being the case the improvements were not made under a claim of the lot under a tax title, because the lot was not sold until December, 1868, nor was the tax deed made until the 13th day of November, 1871; the improvements were made under his claim of title under a deed from Jacks; if he sustained damage by reason of improvements upon land to which he had no title, he must seek his remedy (if he has any) upon his warranty of title by Jacks; the evidence was properly excluded.

Several other questions were raised during the trial, but as they were not made grounds in the motion for new trial, need not be considered.

Finding no error in the judgment and decision of the court below, the same is affirmed with costs.