**HUNT v. HUNT.**

No. 4976.

Court of Civil Appeals of Texas. Texarkana.

June 5, 1936.

Rehearing Denied June 18, 1936.

Smith & West, of Henderson, for appellant.

Joseph H. Byers, of Henderson, for appellee.

HALL, Justice.

Appellant brought this suit in trespass to try title in the district court of Rusk county against Jay V. Hunt and Mrs. Inez Kirkland, a widow. The land involved was 50 acres of the Peck survey. Appellant's petition on which he went to trial was in the statutory form of trespass to try title, and contained a special plea under the ten-year statute of limitation (Rev.St.1925, art. 5510). Appellee answered by general demurrer, general denial, plea of not guilty, and specially that he derived title through a deed from his codefendant, Inez Kirkland, dated December 22, 1933. On the date the case went to trial defendant filed an amended answer which, in addition to the allegations of the original answer, contained a special allegation of title to 7/12 undivided interest in the tract of land in controversy. Appellee interpleaded his codefendant, Inez Kirkland, on her warranty, and alleged, further, that certain other parties had an interest in the tract of land; and that he had made certain valuable improvements on the land. Inez Kirkland disclaimed. The case was tried to the court without a jury, and resulted in judgment for appellant for the south 16⅔ acres and for appellee for the remainder of the 50-acre tract.

The record reflects that appellant's father, Bud Hunt, took possession of this tract of land about 1919, and cleared and farmed a part thereof. He held same until his death in 1930. During some of those years appellant assisted his father in cultivating the land. There is evidence in the record from appellant and his witness to the effect that appellant's father fenced the whole of this tract, but cultivated only the south portion. It is also shown that this land was known by some as the John Leopard old place, but at the time Bud Hunt took possession of same it was commonly known as "wild" land, occupied and used by no one. After the death of Bud Hunt in 1930, his wife and children, together with appellant, continued in possession of this land, cultivating a portion thereof until early in 1934 when appellant claimed he was ousted therefrom by appellee. Appellant's first contention is:

"Since the undisputed evidence showed prior possession of all of the land in suit by appellant and his privies in title and possession, it was the duty of the trial court, as a matter of law, to render judgment in favor of appellant for the entire tract of land for which he sued, appellees having failed to show a better title or any title at all."

In other words, the appellant having made out a prima facie case of prior possession of the land in controversy, appellee could recover only on the strength of his own title, and if he had none, appellant was entitled to a judgment for the title to the whole tract of land. As said before, it was undisputed that Bud Hunt, father of appellee, had possession of and cultivated a portion of the land from 1919 until his death in 1930. The tax records show that Bud Hunt paid taxes on 48 acres of the Peck survey for some eight or nine years from and after 1919, and it was shown that the tract in controversy was the only land Bud Hunt claimed on the Peck survey. The testimony of appellant and his witnesses was to the effect that his father maintained a fence around the entire tract from 1919 until his death. There was evidence that a negro by name of Bill King was in possession of the north part of the land, but appellant testified without dispute that King held the north portion by Bud Hunt's permission, and after Bud Hunt's death he held same by the permission of appellant. Appellant testified that he was in possession of the land in controversy by a lease from his stepmother in the early part of 1934, when appellee, Jay V. Hunt, came upon the land. In this connection, appellant stated: "I started in to plow and plowed some, and went to plow some more and he ordered me off, and he said it was his; said that he bought it and he had a good deed; and he said he knew one damn thing sure, that I was not going to plow there." After this conversation appellant left the land, secured a deed to the same from his stepmother, brothers, and sisters, and shortly thereafter instituted this suit.

Appellee testified that:

"Q. You stated to Mr. Byers you didn't ask Mrs. Hunt, the widow of G. A. (Bud) Hunt, or any of the heirs anything about taking possession? A. No.

"Q. You knew they had been in possession of it the year before? A. Yes, sir.

"Q. And you knew they had been in possession of it a number of years, didn't you? A. Yes, sir."

Other witnesses, both for appellant and for appellee, testified as to the use and

possession of this land by Bud Hunt until his death, and afterwards by his widow and children. The appellee purchased a purported 7/12 undivided interest in said land from Inez Kirkland, a daughter of John Leopard, by deed dated December 22, 1933. This deed he introduced in evidence. He also introduced a deed from Thomas Hunt to John Leopard dated September 3, 1872, covering 100 acres of the Peck survey. Appellee's claim of title to the 7/12 undivided interest in the land in controversy is based entirely on these two deeds. By stipulation in the record it was agreed that a patent to the Peck survey had been issued by the state, but there was no agreement as to common source. Thus it will be seen that appellant bases his right to a judgment for the land on prior possession of same by his father, stepmother, and himself; while appellee bases his right to judgment on his record title as reflected by the two deeds above referred to. The rule in cases of this character is stated by Chief Justice Hemphill in Wilson v. Palmer, 18 Tex. 592:

"It appears now to be a well established principle, though once doubted, that a prior occupancy is sufficient title against a wrongdoer." Citing cases.

The case of Watkins v. Smith, 91 Tex. 589, 45 S.W. 560, 561, by the Supreme Court, we think is decisive of this case. In that case Judge Gaines says:

"We are thus brought to the question whether, under the established facts of this case, the plaintiff was entitled to recover by reason of his possession of the premises at the time of defendant's entry. In Keys v. Mason, 44 Tex. 140, Chief Justice Moore says: 'It is true, the possession of the defendant entitles him to a judgment against the plaintiff, unless the latter shows a prima facie title. He does this when he deraigns title from the sovereignty of the soil down to himself; or if he shows title out of the government, and subsequent possession for sufficient length of time to toll the right of entry, *or merely a prior possession to that under which the defendant claims with a regular chain of title connecting himself with such possession,*' etc. *The remark as to prior possession was made merely by way of argument, and is a dictum; but it is, in our opinion, a correct statement of the rule.* The rule there announced has been frequently applied in this court. House v. Reavis, 89 Tex. 626, 35 S.W. 1063; Duren v. Strong, 53 Tex. 379; Caplen v. Drew, 54 Tex. 493; Parker v. Fort Worth & D. C. Ry. Co., 71 Tex. [132] 133, 8 S.W. 541; Pacific Express Co. v. Dunn, 81 Tex. 85, 16 S.W. 792; Linard v. Crossland, 10 Tex. 462 [60 Am.Dec. 213]. But it is ingeniously argued that the rule is not applicable to a case where the defendant enters without actual force under a claim of right, for the reason that one who takes possession under claim and color of title cannot be deemed a naked trespasser. It is true that the proposition is most usually announced under the form that prior possession is prima facie evidence of title against a naked trespasser or a mere intruder. *But we have been cited to no case, nor have we found any, in which it has been decided that possession is not evidence of title against any wrongdoer.* It is not a rule of property. It is a mere rule of evidence, and is founded upon the principle that, since ownership is a usual concomitant of possession, it is a reasonable prima facie inference that the possessor of property is the owner of such property. The inference is no less cogent when the trespasser claims title without showing that he has the title than when he intrudes without any claim whatever. Upon this immediate point, we regard the case of Duren v. Strong, above cited, as being directly in point. In that case the defendants claimed under a chain of conveyances which they introduced in evidence, but failed to show a conveyance to the first grantor from the patentee of the land. The court, in the opinion, declined to discuss any other question save that of the prior possession of the plaintiff, and said: *'The plaintiff having clearly established a prior peaceable possession never abandoned, and the defendants having failed to show any right to disturb that possession, the judgment in favor of plaintiff should stand.'* See, to the same effect, Elofrson v. Lindsay, 90 Wis. 203, 63 N.W. 89; Jacks v. Dyer, 31 Ark. 334.

"The plaintiff in this case was in possession of a part of a tract of land which included the land in controversy, claiming the whole under a deed. He had constructive possession of the part not actually inclosed; and we are of opinion that such possession was prima facie evidence of title in him to the entire tract described in his deed. *When occupancy of a part is equivalent to a possession of the whole under the statute of limitations, we see no good reason why it should not be prima facie evidence of title to the whole for the purposes of a case like this.*" (Italics ours.) Hum-

ble Oil & Refining Co. v. Wilcoxon (Tex. Civ.App.) 70 S.W.(2d) 218, and cases there cited.

Some evidence was introduced in the record to the effect that Bud Hunt as well as appellant were tenants in common with Inez Kirkland, the grantor of appellee, but the record affirmatively shows that appellant was holding in his own right and not as a tenant in common with Inez Kirkland and others. Appellee testified he did not know he was related to John Leopard. Moreover, no title to this land was shown in the alleged common ancestor, John Leopard, and there could be no basis for a common tenancy. The appellant proved a prima facie case of prior possession in himself and those under whom he holds, while appellee wholly failed to show any title either in himself or those under whom he held. So, in our opinion, a judgment should have been rendered for appellant for the whole of the 50-acre tract of land in controversy.

We do not think appellee is entitled to recover for improvements made on the land in controversy. He admitted and other proof showed that a short time after appellee had taken possession of the land in controversy he received from appellant by registered mail the following letter:

"Henderson, Texas, Route 3, Box 111,
February 13, 1934.
"Mr. Jay Hunt, Henderson, Texas.

"Dear Sir: I am notifying you that I, Austin Hunt, have leased all the land situated about 7 miles East of the City of Henderson, Texas, facing the old Pine Hill Road and known as the Leopard Place, for the year of 1934, from (the widow of G. A. Hunt) Mrs. Fannie Hunt of Rusk County, Texas.

"No trespassing.

"I am very truly yours,
"Austin Hunt."

Appellee testified that at the time he received this letter he had not built his dwelling house on the land, but was making preparation to construct same. He had done some clearing and cleaned out some hedge rows. It plainly appears that whatever improvements, besides clearing some land and cleaning hedge rows, appellee made on said land were made after he received notice of the claim of appellant.

Therefore the judgment of the lower court is affirmed in so far as it awards to appellant 16⅔ acres of the land in controversy and is reversed and here rendered for appellant for the remainder of the tract of land described in appellant's amended petition.