**NESRAL PRODUCTION CO. v. ST. LOUIS, B. & M. RY. CO. et al.**
**No. 10362.**

Court of Civil Appeals of Texas. Galveston. July 3, 1935.

Rehearing Denied July 18, 1935.

806

Lockhart, Hughes & Lockhart, of Galveston, for appellant.

E. H. Crenshaw, Jr., of Kingsville, for appellees St. Louis, B. & M. Ry. Co. and others.

Terry, Cavin & Mills, of Galveston, for appellee W. M. Howard.

GRAVES, Justice.

This much of the brief for the appellee railway company and its trustees is adopted by this court both as to its statement of the issues involved and the determination thereof:

"This is an appeal from an order of the district court of Galveston county denying a temporary injunction to restrain the appellee railway company and its trustees from drilling or permitting the drilling for oil on land occupied by it in Refugio county. It was alleged that an oil, gas, and mineral lease had been given by appellee railroad to appellee W. M. Howard, and appellant prayed for a temporary injunction to restrain him from drilling under the lease.

"Appellant claims to be the owner of a tract of 100 acres, adjoining a 100-foot strip of land occupied by appellee rail-road, and makes the contention that appellee railroad holds only a surface easement giving it the right to occupy this 100-foot strip for the purpose of maintaining and operating a railroad, and that appellant is the owner of one-half of the 100-foot strip, subject to the easement so held by appellee railroad.

"The railroad, on the other hand, claims to own a fee-simple title to the 100-foot strip; and the nature and extent of the title held by appellee railroad is the controlling question in the case.

"An agreed statement was made up, signed, and filed by the parties, and was considered by the trial court in passing upon the prayer for temporary injunction.

"On May 31, 1904, T. C. Heard executed, acknowledged, and delivered to Sam Lazarus (admitted to be the trustee of the St. Louis, Brownsville & Mexico Railway Company) a deed reading as follows:

"'The State of Texas, County of Refugio.

"'Know All Men by these Presents, That I, T. C. Heard, of the County of Refugio and State of Texas, in consideration of the benefits that will accrue to me by reason of the construction and operation of a railroad from a point at or near Robstown, Texas, through the town of Sinton and Refugio to some point on the Brazos River or to a point in either Harris or Galveston County, or Bay City, Matagorda Co. Texas, and in consideration of the sum of One Dollar ($1.00) to me in hand paid, have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto Sam Lazarus, Trustee, of the City of St. Louis and State of Missouri, the following described lots, tracts, or parcels, of land, situated in the County of Refugio and State of Texas, and out of the following surveys: N. S. Crunk, E. H. Winfield, Jno. H. Peoples, Maria S. Ximenes.

"'Commencing at a point where the proposed extension of the St. Louis, Brownsville & Mexico Railway, as now located, enters my land at stake thence passing across my entire lands in said County so as to include a continuous strip one hundred (100) feet wide, the center line of which strip is the located line of said proposed extension and the side lines of which strip are each fifty (50) feet from said center of the located line. Said strip of land leaves my land at stake.

" 'If in the actual construction of said railway, it should vary so that the center line of the same as constructed should not coincide with the center line as now located, then this deed shall be held to embrace and shall embrace a continuous strip of land one hundred (100) feet wide as aforesaid and extending through my lands as aforesaid, the center line of which shall be the center line of the actually constructed railway and the side lines of which shall be each fifty (50) feet from the center line of said constructed railway.

" 'I hereby convey a continuous strip as above described across all of my lands situated in said county whether or not there are named above all of the surveys across which said strip extends. Said land is conveyed to the said Sam Lazarus, Trustee, together with all and singular the rights and appurtenances thereunto belonging or in any wise incident or appertaining.

" 'To Have and To Hold unto him, the said Sam Lazarus, Trustee, his heirs, and assigns forever. I also convey to him, his heirs and assigns, the right to bore artesian wells on said land and to use all water therefrom necessary for railway purposes. The statement of this privilege is not intended in any way to restrict any right, power or title otherwise passing by this deed to him, his heirs and assigns, but is only inserted to avoid any question that might arise by reason of the use of the lands for obtaining water therefrom or in connection therewith. I hereby bind myself, my heirs, executors and administrators to warrant and forever defend all and singular the title to the said premises unto him, the said Sam Lazarus, Trustee, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

" 'Said Lazarus, Trustee, has full, absolute and complete power of sale, transfer and conveyanece of all said lands herein conveyed to him as fully and completely as if they were conveyed to him in his personal and individual right and capacity.

" 'If a railway shall not be constructed across said land by the 31st day of December, 1905, and a train of ten cars run over the railway so constructed by said date, the title to the land above conveyed shall revert to me; and in case operation of railroad should ever be suspended the said land shall revert to me.

" 'If after said road is so constructed, and said train so run, said Lazarus, Trustee, or his heirs or assigns, shall desire any further deeds, conveyances, acquittances or warrants of title to the land above conveyed I agree to make the same upon demand at any time within a year after the construction of said road and the running of said train.

" 'Witness my hand this the 31st day of May, 1904.

" 'T. C. Heard.

" '(Duly acknowledged for record the same day.)'

"This deed was promptly filed for record, and the railroad forthwith entered upon the strip of land and constructed thereon a railroad, completing the same, and operating a train within the time stipulated in the instrument. It has since continuously held this land and continuously operated the railroad thereon.

"On September 13, 1912, Mary C. Heard and C. H. Heard (agreed to be the only heirs at law of T. C. Heard) executed and delivered to Thomas J. O'Connor a deed conveying certain land in Refugio county; one call of the description reading: 'Thence with said fence North 81 deg. 8' West three hundred and fifteen (315) varas, the line of the land belonging to the St. Louis, Brownsville & Mexico Railway, at wing of cattle pens. Thence with the line of said land of said Railway Company North 43 deg. 35' East eighteen (19) varas, a pointed mesquite post.'

"On November 7, 1912, said C. H. Heard and Mary C. Heard conveyed to John M. O'Brien and Mrs. Rose Lambert certain lands, one call of the deed ending at 'the east line of the St. Louis, Brownsville & Mexico Railway Company's lands at pens.'

■ "Under the quoted deed, appellee railroad acquired from T. C. Heard (the common source of title) and still holds in fee the 100-foot strip of land in controversy. It has the right, therefore, either by its own efforts or the efforts of lessees, to drill upon the land for oil, gas, and other minerals, to the exclusion of all other persons; and appellant was not entitled to restrain appellee railroad from so doing. Friedman Oil Corp. v. Southern Oil Refining Co. (Tex. Civ. App.) 73 S.W.(2d) 137; W. J. Brightwell et al. v. I.-G. N. Railroad Co. (Tex. Civ. App.) 41 S.W.(2d) 319; Id., 121 Tex. 338, 49 S.W.(2d) 437,

84 A. L. R. 265; Bell County v. Alexander, 22 Tex. 350, 73 Am. Dec. 268; Lindsay v. Freeman, 83 Tex. 259, 263, 18 S. W. 727; Olcott v. Gabert, 86 Tex. 121, 23 S. W. 985; Wilson v. School Trustees (Tex. Civ. App.) 229 S. W. 669; Taylor v. School Trustees (Tex. Civ. App.) 229 S. W. 670; Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930.

"The language of the deed in this case is stronger and more effective to convey a fee-simple title than the deed in the Brightwell Case; it being innocent of an apparent ambiguity in the Brightwell deed.

"Here the grantor conveyed to the appellee railroad 'the following described lots, tracts, or parcels of land'; at the end of the description, the deed contains the following explanatory paragraph: 'I hereby convey a continuous strip as above described across all of my lands situated in said county, whether or not there are named above all of the surveys across which said strip extends. Said land is conveyed to the said Sam Lazarus, Trustee, together with all and singular the rights and appurtenances thereunto belonging or in any wise incident or appertaining.' The habendum clause is in the usual form and is followed by a general warranty of title.

■■■ "It is statutory in Texas that where an estate in lands is granted, such estate is a fee, unless limited by express words; fee-simple estates never being limited by implication. There being no express words of limitation in this deed, but, on the contrary, a grant of land to have and to hold forever, a fee-simple estate passed to appellee railroad.

"The deed before the court differs only from the ordinary deed in that it is provided that if in the construction of the railroad a change from its location as then decided should be made the deed should operate to grant a strip of 100 feet; 50 feet on each side of the center line of the track as finally constructed. Under the rule that that is certain which can be made certain, the effect of the grant is not impaired by the omission to describe the land conveyed by course and distance.

"Appellant calls to the court's attention a deed executed on April 3, 1906, by C. H. Heard and Mary C. Heard to the St. Louis, Brownsville & Mexico Railway Company, and contends that such latter deed by its terms passed to the railroad merely an easement over the land describ-

ed; he also contends that, by acceptance of the second deed, appellee railroad is estopped to assert a greater estate in the lands than a right of user.

"In the first place, it is not clear that this latter deed passes an easement only. The granting clause is the absolute right of way through, over, across, and upon certain lands in Refugio county; such right of way to embrace and include the following described lands. After a description of the lands, the habendum clause covers, not a right of user granted upon the lands, but 'the above described premises together with all and singular rights and appurtenances thereto in any wise belonging.'

■■■ "Under the rule that in case of uncertainty in the terms of a written instrument it will be taken most strongly against the grantor, it is reasonable to conclude that this instrument was intended as a conveyance of lands, and not the granting of an easement. The words 'right of way,' as applied to railroads, has become a broader expression than when formerly used, being often now used by courts and laymen to describe the lands upon which the railroad is situated, without the intention to denote the character of title which the railroad holds. The words 'through, over, and across, and upon' indicates a grant unlimited perpendicularly as well as a grant marked off laterally, and thus gives to the railroad the land as high as the highest heavens, and as deep as from the center to the circumference of the earth.

■■■ "Estoppel is more often applied to the grantor in a written instrument than to the grantee, and will not be held binding upon the grantee upon the acceptance of a second instrument, unless the first instrument was so imperfect in its terms as that the execution of a second instrument was necessary to give legal effect to the terms of the first. It is clear that no such situation arose in this case; that the first instrument given by T. C. Heard was complete in its terms and effectually passed to the grantee railroad all of the title which the grantor had in the lands, which, presumptively at least, was the whole title thereto. The second instrument executed by the widow and son of T. C. Heard may have been accepted by the grantee, because it conveyed to the grantee other and additional lands than that described in the first deed.

"Wherefore, the deed from T. C. Heard to Sam Lazarus passed to him as trustee, and to his cestui que trust, the appellee railroad, a fee-simple title to the land described.

"Furthermore, the appellee railroad held and claimed the 100-foot strip of land under a deed conveying to it a fee-simple title, and under such claim had peaceable and adverse possession from the year 1904 to the present time. It, therefore, has a fee-simple title to such land under and by virtue of the statutes of limitation.

"It was agreed: 'That immediately upon the execution and delivery of the deed from T. C. Heard to Sam Lazarus, Trustee, on May 31, 1904, The St. Louis, Brownsville & Mexico Railway Company immediately took possession of all of the property described in said deed, claiming title to the said land under and by virtue of the above described deed, such possession being continuous and actual, peaceable, adverse, visible and notorious from said date down to the present time; that for more than twenty-five (25) years said Railway Company has had all of said property under a substantial fence, has continuously paid all taxes on said property as and when due, has been in actual exclusive possession of all of said property, using, occupying, and claiming the same adversely, without interruption of any character; that from the 31st day of May, 1904, down to the time of the institution of the above entitled and numbered suit, no person, association of persons or corporation has filed any suit or action at law or in equity asserting any right, title, interest, lien or claim, in, to, or upon the said tract of land adverse to or inconsistent with the ownership, possession and use thereof by The St. Louis, Brownsville & Mexico Railway Company; that since the date last above mentioned, no person, association or corporation has occupied, used or enjoyed said land nor made any attempt to so use, occupy or enjoy it, and no person other than The St. Louis, Brownsville & Mexico Railway Company has during said period paid any lawful taxes levied upon said realty.' Friedman Oil Corp. v. Southern Oil Refining Co. (Tex. Civ. App.) 73 S.W.(2d) 137; Kingsley v. Kerr (Tex. Civ. App.) 135 S. W. 161; Webster v. I. & G. N. R. Co. (Tex. Civ. App.) 193 S. W. 179; Texas & N. O. R. Co. v. Orange County (Tex. Civ. App.) 206 S. W. 539.

"It is the settled rule in Texas that a railroad company acquiring land by condemnation, or entering upon the land as a naked trespasser, cannot by limitation ripen its title to one of fee simple; but it is equally well settled that a railroad may acquire a fee-simple estate by purchase, and that, if it enters upon land under a deed purporting to grant to it an estate in fee, and thereafter occupies, uses, and enjoys the land in such fashion as to come within the terms of the statutes of limitation relating to actions for real property, it will at the end of the stipulated time acquire a fee-simple title.

"It was even held in the case of Texas & N. O. Railroad Co. v. Orange County, supra, that a deed executed by a county to a railroad, not in compliance with the law regulating the sale of land by counties, was still an instrument purporting to convey a title in fee, and that the railroad company by entering upon the land under such a deed, and holding the same adversely for the required period, acquired a perfect title to the land.

"It thus appearing from the facts that appellee railroad owns the land in controversy in fee, appellant could not be injured in the eyes of the law by the excavation thereof and the taking therefrom of oil and gas.

"It is, in such circumstances as here obtain, axiomatic that the owner of land may take therefrom oil, gas, or minerals beneath its surface, and that no injury is thereby inflicted upon owners of adjoining land, of which complaint will be entertained in court. Since the decision of the Supreme Court in the Calcasieu Lumber Co. Case, 77 Tex. 18, 13 S. W. 453, it is the settled rule in Texas that a railroad company, owning and holding land in fee, can do with its property whatever an individual could do. It, therefore, follows that appellant was not entitled to a temporary injunction, and the trial court ruled correctly in denying appellant's prayer."

The judgment will accordingly be affirmed.

Affirmed.