TEXAS ELECTRIC RAILWAY COMPANY ET AL. V.
WILLIAM F. NEALE ET AL.

No. A-3494. Decided October 22, 1952.
Rehearing overruled November 26, 1952.
(252 S. W., 2d Series, 451.)

*Buford, Ryburn, Hincks & Ford, Sam P. Buford, Clarence A. Guitard,* of Dallas, for Texas Electric Railway Company, *Clark & Seley,* and *Harold Clark,* for Louis H. Shannon and Ike Kestner, *O'Dowd & O'Dowd* and *E. H. O'Dowd,* all of Waco, and *Richard Critz,* of Austin, for A. E. Tindell, petitioners.

The Court of Civil Appeals erred in holding that the deed in question was an easement and not a conveyance of fee simple title to the land herein involved; in assuming without discussing that the term "right of way" as used in the deed could only mean "easement" and is therefore at variance with other language in the deed, and in holding that the deed in question cannot be given a certain and definite legal meaning, in the light of the Supreme Court's opinion in the Brightwell case, 121 Texas 338, 48 S.W. 2d 437, 84 A.L.R. 265. Johnson v. Valdosta M. &

W. Ry. Co., 169 Geo 559, 150 S.E. 845; Universal C.I.T. Corp. v. Daniel, 150 Texas 513, 243 S.W. 2d 154; Texas & Pac. Ry. Co. v. Martin, 123 Texas 383, 71 S. W. 2d 867.

*Street & Street, Sleeper, Boynton, Darden & Burleson* and *Sam Darden,* all of Waco, for respondents.

The Court of Civil Appeals was correct in holding that the deed from Mrs. Behrens and others to Charles H. Allyn and others conveyed an easement in the land, under the assumption that the conveyance was ambiguous, and that upon the abandonment of the use of the interurban railway along said right of way the easement terminated. Magnolia Petroleum Co. v. Thompson, 106 Fed. 2d 217; Piott v. Farmers Elevator Co., 256 S.W. 946; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Texas 574, 136 S.W. 2d 800.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

Respondent William F. Neale and E. C. Street sued petitioners Texas Electric Railway Company and others for the title and possession of a tract or strip of land containing 6.06 acres, which was acquired by the Southern Traction Company by conveyance in 1912 and was used by that company and its successors, respondent Texas Electric Railway Company, as part of the right of way of an electric interurban railway operated by the two companies until December 31, 1948, when operation was discontinued and abandoned.

The trial court's judgment for respondents was affirmed by the Court of Civil Appeals, which held that the deed to the Southern Traction Company conveyed only an easement and not the estate in fee to the land described. 244 S. W. 2d 329.

The decision of the case turns on the construction of the deed, which is as follows, except that we have numbered the paragraphs of the deed for convenient reference, and have omitted the signatures and the certificate of acknowledgment:

(1) "KNOW ALL MEN BY THESE PRESENTS: That We Geo. S. McGhee, Mrs. Dora Behrens and Abe Gross, for and in consideration of One Dollar to me in hand paid and the benefits which will accrue to my other property by reason of the construction of the Interurban Railway hereinafter mentioned, do by these presents grant, sell and convey unto Chas. H. Allyn, W. D. Lacy, J. K. Parr, S. M. Dunlap, J. Baldridge, J. Houston

Miller and W. R. McDaniel, Trustees of the Southern Traction Company, their successors and assigns, the following described piece or parcel of land, to-wit:

(2) "Beginning at a point on the dividing line between J. O. Brittian and J. J. Dean said point being about 508 feet from J. O. Brittian's north east corner; thence about 590 feet in a southerly direction; thence about 10 feet in a westerly direction; thence about 2564 feet in a southerly direction to J. J. Dean's south line, same being D. McCullum's north line; Thence about 60 feet along said line in a southwesterly direction to J. J. Dean's west line; Thence about 60 feet along said line in a northwesterly direction; Thence about 2564 feet in a northerly direction; thence about 10 feet in a westerly direction; thence about 500 feet in a northly direction to J. J. Dean's north line; thence about 140 feet with said line in a northeasterly direction to place of beginning, containing 6 06/100 acres, more or less, being a part of the Tomas de la Vega Eleven League Grant.

(3) "It being the intention of this deed to convey a strip of land 100 feet wide for 550 feet, and 80 feet wide for the balance of the way through the property of J J Dean in the Tomas de la Vega Eleven League Grant.

(4) "It is further understood herein that the above strip of land is conveyed upon the further condition and consideration that said Southern Traction Company will, as soon as it begins operation, establish a stop on the right of way hereinabove conveyed about the center thereof for the purpose of letting passengers on and off its cars which stop shall be as near a street crossing as possible and said Co., shall forever keep up and maintain said stop when so established, and said company further agrees to allow to be opened and dedicated as streets across said right of way such streets as may be opened by grantors herein, it being understood that the property through which this right of way is given is to be opened up as an addition to the city of Waco,

(5) "To have and to hold the same unto the said Trustees, their successors and assigns, forever free of all encumbrances, including telephone, telegraph and transmission lines

(6) "However, this deed is made as a right-of-way deed for an Interurban Railway from Dallas to Waco, Texas, and in case said railway shall not be constructed over said land then this conveyance shall be of no effect.

"WITNESS our hands this 4th day of Sept. A. D. 1912."

The one, or the principal, question to be determined is: Did the deed convey to the grantee merely an easement, that is, the right to use the land for a right of way, or did it convey the title in fee? This question has been before the courts of this state many times. There are two lines of authorities, the one represented by Right of Way Oil Co. v. Gladys City Oil etc. Co., 106 Texas 94, 157 S. W. 737, 51 L.R.A. (N.S.) 268, and the other by Calcasieu Lumber Co. v Harris, 77 Texas 18, 13 S W. 453, and Brightwell et al. v. International-Great Northern R. Co. et al., 121 Texas 338, 49 S. W. 2d 437, 84 A.L.R. 265. Generally stated, the rules announced by these decisions are: First, that, as in the Right of Way Oil Company case, a deed which by the terms of the granting clause grants, sells and conveys to the grantee a "right of way" in or over a tract of land conveys only an easement; and second, that, as in the Calcasieu Lumber Company case and in the Brightwell case, a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or paragraph of the deed the land conveyed is referred to as a right of way.

Looking to the granting clause of the deed, paragraph No. 1, we find that it grants, sells and conveys to the grantee "the following described piece or parcel of land." The quoted words are followed in the deed by a description of the 6.06 acres by metes and bounds and then by the recital, paragraph 3, that it is the intention of the deed "to convey a strip of land 100 feet wide for 550 feet, and 80 feet wide for the balance of the way through the property of J J Dean" in a named survey. The habendum clause, paragraph No. 5, is "To have and to hold the same unto the said Trustees, (of the Southern Traction Company) their successors and assigns, forever free of all encumbrances, including telephone, telegraph and transmission lines." These parts of the deed evidence the intention on the part of the grantor to convey the title to the tract or strip of land, and the Court of Civil Appeals agrees that they do. That Court, however, found in paragraphs numbered 4 and 6 expressions which in its opinion disclose an intention "that the instrument as a whole should evidence a conveyance of right-of-way as distinguished from land." And it then expressed the conclusion that if the language employed in paragraphs numbered 4 and 6 did not clearly express that intention, they made the meaning of the instrument uncertain and ambiguous as to the nature of the estate conveyed so that extrinsic evidence was admissible and could be considered as an aid in ascertaining the true intention of the parties.

Respondents, relying on the recitals in the fourth and sixth paragraphs of the deed, as did the Court of Civil Appeals, insist that the deed conveys only an easement. They especially stress the statement in the sixth paragraph that "this deed is made as a right-of-way deed" and construe that statement to mean or to say that "a right of way is conveyed," that is, an easement merely, and they give that statement controlling effect over the granting clause, which conveys a piece or parcel of land. In this way respondents would bring the case under the rule of Right of Way Oil Co. v. Gladys City Oil etc. Co., 106 Texas 94, 157 S. W. 737, 51 L.R.A. (N.S.) 268.

**1** It is our opinion, after careful consideration of the deed and the decisions, that the case is ruled by Calcasieu Lumber Co. v. Harris, 77 Texas 18, 13 S. W. 453, and Brightwell v. International-Great Northern R. Co., 121 Texas 338, 49 S. W. 2d 437, 84 A.L.R. 265, rather than by the Right of Way Oil Company case. In the case last mentioned the granting clause of the deed granted and conveyed "the right of way 200 feet in width over and upon the above described tract of land," whereas the granting clause in the deed here under construction grants, sells and conveys to the grantee "the following described piece or parcel of land." It does not purport to convey merely a right of way or merely an easement. There do appear in the deed words which show the purpose for which the grant is made, but those words do not undertake to reduce or debase what has been granted from a fee title to a mere easement.

**2** The fourth paragraph provides that the grantee will as soon as it begins operation "establish a stop on the right of way hereinabove conveyed" at a designated place, and will forever maintain the stop, and that the grantee will allow streets to be opened and dedicated "across said right of way." These provisions show that the property is to be used as a right of way. The grantee is obligated to "establish a stop on the right of way hereinabove conveyed." The words "right of way" here used clearly refer to the piece or parcel of land that is conveyed for a right of way. The stop is to be established on the tract or parcel of land. It could not be established on an intangible right, that is, an easement. The same is true of the obligation to allow streets to be opened "across said right of way." "The term 'right of way' has a twofold signification. It is sometimes used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed."

Joy v. City of St. Louis, 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843, 857; see also New Mexico v. United States Trust Co., 172 U. S. 171, 19 Sup. Ct. 128, 43 L. Ed. 407, 411; Johnson v. Valdosta M. & W. R. Co., 169 Ga. 559, 150 S. E. 845, 847. In our opnion the words "establish a stop on the right of way hereinabove conveyed" mean nothing more than that a stop shall be established on the strip or parcel of land that has been conveyed by the deed for right of way purposes. They do not undertake to define or limit the estate or title that has been granted.

The deed construed in Calcasieu Lumber Co. v. Harris, 77 Texas 18, 13 S. W. 453, shows that the strip of land conveyed was intended to be used as a railroad right of way. The granting clause recites that "I, James Manor * * * do grant, bargain, sell and release to the Houston and Texas Central Railroad Company, a strip of two hundred feet of land over the tracts of land particularly described as follows, etc." The habendum clause is in the usual form and refers to "the said premises." The deed contains after the habendum clause the grant to the said company of a full release from all claims for damages that may be sustained by their work "in the construction and for the right-of-way of said Railroad, over any of the said lands." Notwithstanding this reference in the deed to the land conveyed as "right-of-way" the court in its opinion stated that the deed "conveyed to the railway company the estate in fee to this strip of land."

3   The deed construed in Brightwell v. International-Great Northern R. Co., 121 Texas 338, 49 S. W. 2d 437, 84 A.L.R. 265, is, as is observed in the opinion in that case, "the same in every substantial detail" as that involved in the Calcasieu Lumber Company case. It grants "a strip of (200) Two Hundred feet in width of land over the tracts of land, etc." and has the same habendum as that contained in the deed construed in the Calcasieu Lumber Company case. After the habendum clause the deed grants "to said Company such earth, material, timber and rock as may be found on my lands herein mentioned, and *granted herein as right-of-way* which may be required for the construction of said Railroad." There is also in the deed the same release of claims for damages that may be sustained by work in the construction and for the "right-of-way." The words "and granted herein as right-of-way" were relied upon by Brightwell as evidencing an intention on the part of grantor to convey a mere easement and not the fee. The court rejected that

contention and held that the words quoted were not used for the purpose of limiting the title granted, but to confine to the land granted, the two hundred foot strip, the right given to take earth, material and rock. Thus the words "right of way" were regarded by the court as descriptive of the strip of land granted and not as defining the right or title conveyed. We have in the Brightwell case the distinct decision that the use in the deed of the words "granted herein as right-of-way" did not limit the estate granted. On the authority of that decision the words "right of way hereinabove conveyed" in the fourth paragraph of the deed here involved and the words "this deed is made as a right of way deed" in the sixth paragraph do not have the effect of reducing to an easement the fee title conveyed by the granting clause.

The court's opinion in the Brightwell case contains the statement that the decision made in the Calcasieu Lumber Company case "has become a rule of property under which titles and securities of immense value have been acquired in this State, and it should not now be disturbed or changed." The same is true of the decision in the Brightwell case.

Several decisions have followed and applied the rule of the Brightwell case. among them being Texas Conservative Oil Co. v. Thompson, 163 S. W. 2d 854, in which application for writ of error was refused, and Nesral Production Co. v. St. Louis B. & M. Ry. Co., 84 S. W. 2d 805. The Brightwell case was followed in Texas Conservative Oil Co. v. Thompson, although the granting clause recited that the tract or strip was conveyed to be held and used as a right of way. The words used in the deed were that it granted, sold and conveyed "all those certain tracts, pieces or parcels of land, to-wit: (100 feet being 50 feet on either side center of the track or line) * * * the said piece, tract or stip of land one hundred (100) feet in width is now hereby by me conveyed to said railway company to be held, occupied and used by it as and for its use as a right of way."

There are on the other hand a number of decisions by the courts of this state following Right of Way Oil Co. v. Gladys City O. G. & M. Co., 106 Texas 94, 157 S. W. 737, 51 L.R.A. (N.S.) 268, in holding that when the deed grants and conveys not a tract or strip of land but a right of way over or upon land, an easement only is acquired. Among them are the following cases cited in the opinion of the Court of Civil Appeals and by respondents: Houston & T. C. R. Co. v. Central Texas Securities

Corp., 68 S. W. 2d 585; Gulf Coast Water Co. v. Hamman Exploration Co., 160 S. W. 2d 92; Boles v. Red, 227 S. W. 2d 310. In each of those cases the right or interest conveyed was described in the granting clause as "right of way."

The fourth paragraph of the deed here involved was inserted for the purpose of obligating the grantee to establish and maintain a stop on the right of way; and the sixth paragraph, beginning with the word "however," has for its purpose the imposition of a condition precedent upon the title conveyed which, without the sixth paragraph, would be an unconditional fee title. The record shows that the condition was performed by the construction of the interurban railway, which was operated continuously for many years.

4 Appropriate use was made of the words "right of way" in the fourth and sixth paragraphs, of the deed, for, as has been said, the words sometimes describe the strip of land over which a railway is constructed and sometimes describe a right of passage or easement. And since the words as there used clearly have reference to the land and not to an intangible right, they are not contradictory of the granting clause. In the use of the words "right of way" in the two paragraphs the purpose for which the land is conveyed, the use intended to be made of it, is indicated. This fact, however, does not change the effect of the conveyance, for the declaration in a deed of the purpose for which the land is conveyed or the use to be made of it does not impose a condition upon the title granted; nor does it operate to limit the grant to a mere easement. Stanberry v. Wallace, (Com. App.) 45 S. W. 2d 198; Texas & Pacific Ry. Co. v. Martin, 123 Texas 383, 71 S. W. 2d 867; Hughes v. Gladewater County etc. School District, 124 Texas 190, 76 S. W. 2d 471; City of Stamford v. King, 144 S. W. 2d 923, application for writ of error refused; Green v. Kunkel, 183 S. W. 2d 585.

In view of our conclusion that the deed conveying the land in controversy to petitioners' predecessor in title by its terms plainly and clearly discloses the intention to grant and convey title to the land and not merely an easement over it, we do not consider extrinsic evidence to ascertain the intention. Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Texas 574, 583, 136 S. W. 2d 800, 127 A.L.R. 1217; Universal C.I.T. Credit Corp. v. Daniel, 150 Texas 513, 243 S. W. 2d 154, 157.

5 Respondents present by counter point the contention that by

reason of the obligation in the fourth paragraph of the deed that the grantee establish and forever maintain a stop on the right of way the estate granted by the deed terminated when the operation of the railway was abandoned. The provision is that "the above strip of land is conveyed upon the further condition and consideration that said Southern Traction Company will, as soon as it begins operation, establish a stop on the right of way hereinabove conveyed * * * and said Co., shall forever keep up and maintain said stop when so established." It is argued that by reason of this provision the deed conveyed either an estate on condition subsequent or a determinable fee.

In our opinion the obligation imposed by the fourth paragraph to establish and maintain the stop is a covenant. The deed does not expressly provide that title shall revert to the grantor in case of nonperformance on the part of the grantee; nor does it provide that title shall terminate when the stop is no longer maintained. Conditions and limitations that work forfeiture or termination of title are not favored, and in case of doubtful language the promise or obligation of the grantee will be construed to be a covenant. Chicago, Texas, etc. Ry. Co. v. Titterington, 84 Texas 218, 222, 19 S. W. 472; Sisk v. Randon, 123 Texas 326, 331-332, 70 S. W. 2d 689; Glen Rose Collegiate Institute v. Glen Rose Independent School District, 58 Texas Civ. App., 435, 125 S. W. 379, application for writ of error refused; 21 C.J.S. p. 895, Sec. 18; 19 Am. Jur. pp. 533-534, Sec. 68. We do not have for decision the question whether the covenant to maintain the stop was breached by the abandonment of the operation of the railway. The record shows that the stop was established when the operation of the railway was begun in October, 1913, and was maintained until the abandonment of operation on December 31, 1948.

6 In their brief filed in the Court of Civil Appeals respondents seek to sustain the trial court's judgment on the theory that the Southern Traction Company, an interurban railway company, could not by deed, irrespective of its terms, acquire more than an easement in land conveyed to it for right of way purposes. It is argued that while Articles 6537 and 6538 of the Revised Civil Statutes of 1911 expressly gave to railroad companies the right to acquire by purchase and by voluntary grant such real and other property as might be necessary for the construction and use of their railways, there was no statute then in effect giving any such right to interurban railway companies. They invoke the language of Article 6532 of the Revised Statutes of 1911

that "the right of way secured are to be secured to any railway company in this state, in the manner provided by law, shall not be so construed as to include the fee simple estate in lands," contending that this article applied as well to interurban railroad companies because Article 6733 provided that they should have the right of eminent domain as fully as it had been conferred upon steam railroad corporations.

Respondents' argument assumes that no authority was given to interurban railroad companies to acquire land for rights of way except by Article 6733, and then proceeds to the conclusion that since the article authorized the acquisition of rights of way it permitted only the acquisition of easements and not title in fee.

Article 6733 to 6741, except for Article 6740 relating to the production and selling of light and power, were concerned with conferring upon interurban railroad companies broad powers of eminent domain, the right to acquire by condemnation property for rights of way and as sites for depots and power plants. By reason of references in those articles to the right of eminent domain already given to steam railroad corporations it is doubtless true that it was intended that interurban railroad corporations, like other railroad corporations, should acquire by condemnation only easements and not titles in fee. But we find in those articles no expression and no implication that interurban railroad corporations might not acquire title in fee by deed.

General words used in Chapter 9 of Title 115 of the Revised Statutes of 1911, of which articles 6537 and 6538 are a part, such as "all railroad corporations," "any railroad company," and "the right to receive and convey persons and property on its railway by the power and force of steam or by any mechanical power," suggest that the right given to "any railroad company" by Article 6537 to purchase, hold and use real estate might be intended to apply as well to interurban railroad corporations as to other railroad corporations.

7   But if Article 6537 had no application to interurban railroad corporations, then those corporations were, in our opinion, given the right to purchase and hold real estate for use as rights of way by Article 1140 of the Revised Civil Statutes of 1911. Southern Traction Company was incorporated under Subdivision 60 of Article 1121 (now Subdivision 68 of Article 1302, R. S. 1925), part of the title "Corporations-Private." Subdivis-

ion 60 authorized the creation of corporations for the "construction, acquiring, maintaining and operating lines of electric * * * motor railways within and between any cities or towns in this state for the transportation of freight or passengers, etc." Article 1140, part of the same title, provided that every private corporation had power "to purchase, hold, sell, mortgage or otherwise convey such real and personal estate as the purposes of the corporation shall require." This language is broad enough to give to interurban railroad corporations the right to acquire by purchase and deed a title in fee to land for use as right of way.

Article 6532, Revised Civil Statutes of 1911, does not forbid a railroad corporation or an interurban corporation to acquire by deed the fee simple estate in land for a right of way. The effect and meaning of the decisions that have been discussed, including Right of Way Oil Co. v. Gladys City Oil, etc. Co., 106 Texas 94, 157 S.W. 737, 51 L.R.A., N.S. 268, are that the article does not forbid the acquisition of title in fee by purchase and deed. The opinion in that case contains these words: "But land to be used as a right of way may be conveyed in fee, therefore the character of the title conveyed must be determined by the words used and the attending facts and circumstances." In discussing Article 6532 (Article 4473, R. S. 1895) the court in that case said: " 'The manner provided by law' is either by agreement with the owner or condemnation, therefore, if the owner by agreement conveys the *right of way,* it is secured to the railroad company in the manner provided by law and will be governed by the statute, and can not be construed to confer a fee simple title to the land." By this language, including the quoting and emphasizing of the words "right of way," the court is saying and holding that when the deed conveys the "right of way" it shall not be construed to convey the fee simple title. The clear implication, consistent with the words first above quoted from the opinion, is that when the deed conveys the land and not merely the "right of way" it may and should be construed as conveying the see simple title.

The judgment of the District Court and the judgment of the Court of Civil Appeals are reversed and judgment is here rendered as follows: That respondents take nothing by their suit against petitioners for title and possession of the premises described in respondents' first amended original petition, and take nothing by their suit for damages; that petitioner Texas Electric Railway Company on its cross action have and recover

judgment against respondents for the title and possession of the land described in respondents' first amended original petition, except those parts of the said land that were conveyed by Texas Electric Railway Company to A. E. Tindall by deed dated June 28, 1949, recorded in Volume 634, page 300, of the deed records of McLennan County, Texas, and to Louis H. Shannon by deed dated July 9, 1949, and recorded in Volume 634, page 455, of the deed records of said county; and that petitioner Texas Electric Railway Company take nothing by its cross action against respondents for damages.

Associate Justices Calvert and Wilson not sitting.

Opinion delivered October 22, 1952.

Rehearing overruled November 26, 1952.