**S. H. OIL & ROYALTY COMPANY et al.,**
**Appellants,**

v.

**TEXAS & NEW ORLEANS RAILROAD**
**COMPANY, Appellee.**

No. 6048.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 20, 1956.

Rehearing Denied Oct. 17, 1956.

Lawler, Childress & Crady, Strong, Baker & Compton, Houston, for appellants.

Baker, Botts, Andrews & Shepherd, Houston, for appellee.

ANDERSON, Justice.

The suit, in form of trespass to try title, was brought by the Texas and New Orleans Railroad Company against S. H. Oil & Royalty Company and Thomas J. Haberle to recover title to and possession of 1.7 acres of land in Chambers County, a part of the William Bloodgood Survey. The defendants answered by pleas of not guilty. The plaintiff prevailed in a trial before the court, and the defendants appealed. As was proper in the circumstances, the appeals were originally perfected to the Galveston Court of Civil Appeals, and the case was then transferred to this court by the Supreme Court.

The land that is involved lies within the boundaries of appellee's railroad right of way and the real matter in issue is that of whether appellee owns the land in fee or only has an easement in and over it. The answer to the question is dependent upon the manner in which a deed in the common chain of title of the parties is construed.

Both the plaintiff and the defendants claim title under an agreed common source, A. M. Fisher, who, under date of July 10, 1917, conveyed to R. S. Sterling by general warranty deed 11.4 acres of land, of which the land in controversy is a part. R. S. Sterling, in turn, by deed dated November 8, 1919, conveyed the same 11.4 acres to Dayton-Goose Creek Railway Company, representing in his deed of conveyance that legal title to the land had been acquired and held by him in trust for the grantee railway company. In each of the mentioned deeds, appropriate reference having been first made to the survey in which it was situated, the land was described by metes and bounds as follows:

"Commencing at the NE corner of the A. M. Fisher tract; Thence South 79 deg. 48 min. W. along the north line of the Bloodgood survey 426.7 feet to a point on the westerly right of way line of the D. & G. C. R. R., said point being 50 feet from the center line of said railroad measured at right angles thereto; Thence South 5 deg. E. 50 feet from and parallel to said center line 1011.7 feet to a point on the south line of the A. M. Fisher tract; Thence north 79 deg. 36 min. E. with the south line of the A. M. Fisher tract 553.2 feet to the SE corner of the A. M. Fisher tract; Thence North 12 deg. 18 min. W. 1008 feet to the place of beginning, containing 11.4 acres."

Two days after acquiring the deed from R. S. Sterling, or under date of November 10, 1919, Dayton-Goose Creek Railway Company executed and delivered to Humble Oil & Refining Company an oil, gas and mineral lease on the entire 11.4 acres, the land being described as it was in the aforesaid deeds. The lease was an ordinary commercial-type lease that provided for payment in kind of an oil royalty of one-sixth of all oil produced and saved, and for payment in money for all gas produced and sold. For want of production of oil, gas or other minerals in the meantime, the lease lapsed under its own terms at the expiration of the five-year primary term for which it was granted. It was formally released of record by Humble Oil & Re-

fining Company under date of May 15, 1950.

After the aforesaid lease had come into being and while it was still in force, Dayton-Goose Creek Railway Company, under date of January 10, 1922, executed and delivered to R. S. Sterling the deed the effect of which is now in dispute. The deed contained conventional granting and habendum clauses, and, insofar as material here, described the premises conveyed by it as follows:

"All that certain tract of land out of the William Bloodgood Survey, bounded and described as follows, viz.: Beginning at the north-east corner of the A. M. Fisher tract; thence South 79 degrees 48 minutes West along the North line of the Bloodgood Survey 326.3 feet to a point on the East line of the right of way, of D. G. C. Railway track, which point lies 50 feet East of and at right angles to the center line of the main line of said railway; thence South 5 degrees East along the said East line of the right of way of said railway and 50 feet distant from the center line of said main line, 1011.7 feet to corner on the south line of the said A. M. Fisher tract; thence North 79 degrees 36 minutes East with the South line of the said A. M. Fisher tract 452.8 feet to corner; thence North 12 degrees 18 minutes East 1008 feet to the place of beginning, and containing nine and 7/10 (9.7) acres of land, and being all that certain tract conveyed to R. S. Sterling by A. M. Fisher by deed recorded in Vol. 8, page 93, et seq., Deed Records of Chambers County, Texas, save and except the 100 foot right of way of said railway off the west side of said tract, which right of way 100 feet wide is reserved by said railway and is not hereby conveyed."

The deed also contained the following provision, the effect of which is disputed:

"The said Dayton-Goose Creek Railway Company has heretofore executed an oil, gas and mineral lease upon the above described premises to the Humble Oil & Refining Company, and said Dayton-Goose Creek Railway Company hereby conveys to the said R. S. Sterling, Grantee, all of its royalties, rights, interests and estates in or under said lease, hereby transferring to the said R. S. Sterling all and every right which it has in or under said lease."

Appellee Texas and New Orleans Railroad Company owns whatever title Dayton-Goose Creek Railway Company retained to the land in controversy after making the deed of January 10, 1922, to R. S. Sterling, having acquired it by deed dated June 30, 1934. Appellants claim through or under R. S. Sterling, and we shall assume for present purposes that between them they own whatever title Sterling acquired to the land by the aforesaid deed of January 10, 1922.

For what it is worth, the parties stipulated that from the time he acquired legal title to the land from A. M. Fisher on July 10, 1917, until he received from Dayton-Goose Creek Railway Company the deed of January 10, 1922, R. S. Sterling was president of Dayton-Goose Creek Railway Company and the owner of all of its stock, and was at the same time chief executive officer of Humble Oil & Refining Company, either as president of the company or as chairman of its board of directors.

Appellants make three contentions on appeal: (1) That as a matter of law, though not in fact, the specific or metes-and-bounds description in the deed from Dayton-Goose Creek Railway Company to R. S. Sterling included the land that was in the right of way, as a result of which the deed vested in the grantee fee simple title to the land, burdened with only an easement in favor of the grantor. (2) That, in the alternative, the general description by which the land that was the subject of conveyance was described in the deed as being "all that certain tract conveyed to R. S. Sterling by A. M. Fisher by deed recorded in Vol. 8, page 93, et seq., Deed Records of Chambers County, Texas, save and ex-

cept the 100 foot right of way of said railway off the west side of said tract," should be given controlling effect over the specific or metes-and-bounds description, and that on this basis the deed should be held to have conveyed the fee in the entire 11.4 acres of land described in the Fisher-Sterling deed, subject to an easement in the right of way. (3) That, irrespective of how other portions of the deed are construed, the portion thereof by which the grantor in terms conveyed "all of its royalties, rights, interests and estates in or under" the outstanding mineral lease, thereby "transferring * * * all and every right which it [had] in or under said lease," should be held to have been a conveyance of all oil, gas and other minerals in the entire 11.4 acres of land described in the lease.

The first contention is based on the theory that the deed did not by its own terms clearly evidence an intention on the part of the grantor to exempt the land in the right of way from sale, and that therefore, since the land that was described by metes and bounds adjoined one side of the right of way, and the grantor owned no land adjoining the other, a presumption must be indulged that the grantor intended to convey the land in the right of way, reserving only an easement in it, and the specific or metes-and-bounds description must be held to have included said land. In support of said contention, appellants cite the following authorities: Bolton v. Dyck Oil Co., Tex.Civ.App., 114 S.W.2d 299; Cantley v. Gulf Oil Production Co., 135 Tex. 339, 143 S.W.2d 912; Cox v. Campbell, 135 Tex. 428, 143 S.W.2d 361; Haines v. McLean, Tex., 276 S.W.2d 777; Joslin v. State, Tex.Civ.App., 146 S.W.2d 208, writ refused; Lewis v East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977; Shell Pet. Corp. v. Ward, 5 Cir., 100 F.2d 778; Stroud v. Hunt Oil Co., Tex.Civ.App., 147 S.W.2d 564.

■ Finding ourselves unable to concur in appellants' major premise—their premise that the deed did not by its own terms clearly evidence an intention on the part of the grantor to exempt the land in the right of way from sale—we overrule the contention and appellants' first point.

Not only did the specific or metes-and-bounds description patently fail to include the right-of-way strip, and purport to describe only 9.7 acres of land (leaving of the original 11.4 acres the 1.7 acres that are in controversy), but the deed further identified the land that was the subject of conveyance as being the same tract A. M. Fisher had conveyed to R. S. Sterling, "save and except the 100 foot right-of-way of said railway off the west side of said tract," and then immediately provided: "which right-of-way 100 feet wide is reserved by said railway and is not hereby conveyed." Unless, therefore, we should hold that as a matter of law the term "right of way" described or referred to only a servitude of passage, or unless we should hold that as used the term was ambiguous, the language of the deed leaves no possible room to doubt that the grantor intended to except the land in the right of way from the sale and to retain title to it; and we are firmly of the opinion that the law neither requires nor would sanction the first holding, and are of the further opinion that the second is not justified in the circumstances unless the term is invariably ambiguous when not used in circumstances in which it has acquired a fixed meaning.

■ While it appears to be true that when used in this state in an instrument of conveyance to describe or to limit the estate that is the subject of conveyance the term "right of way" is to be construed as describing or as denoting only a servitude of passage or a mere easement, Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268, the term is nevertheless recognized by our courts as having a twofold signification and as being used upon occasion and in other circumstances

to describe or denote the right-of-way strip of land itself. Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451; Brightwell v. International-Great Northern R. Co., Tex.Civ.App., 41 S.W.2d 319, affirmed 121 Tex. 338, 49 S.W.2d 437; Nesral Production Co. v. St. Louis, B. & M. Ry. Co., Tex.Civ.App., 84 S.W.2d 805. And we think it clearly apparent on the face of the deed itself that it was in the latter sense, or to denote the land itself, and not to denote a mere easement or servitude of passage, that the term was used in this instance.

In addition to the fact that the specific or metes-and-bounds description failed to include the right-of-way strip, it is to be noted that the subject matter of the exception and reservation was referred to as *the* right of way rather than as *a* right of way, and this is significant when we consider that the right-of-way strip was owned in fee by the grantor and that no easement had been theretofore created in it. The choice of articles suggests to our minds that in speaking of "the right of way" the parties to the deed had in mind something tangible and in being (the land) rather than an intangible easement or right of use that was being created for the first time, and this concept is further contributed to, we think, by the following phraseology of the deed: *"which* right of way \* \* \* is reserved by said railway *and is not hereby conveyed."* Furthermore, if the grantor intended to convey the fee in the entire 11.4 acres and to reserve only an easement in the right-of-way strip, it was altogether pointless for it to describe 9.7 acres of the 11.4 acres by metes and bounds, and it is virtually inconceivable that it would have done so, because it could have accomplished its purpose beyond question and with maximum protection to its own rights by merely conveying the entire 11.4-acre tract and reserving an easement in a strip one hundred feet wide along the tract's west boundary line. Yet, if we go beyond the four corners of the deed and compare the field notes of the 9.7-acre tract with those of the 11.4-acre tract as contained in the Fisher-Sterling deed, we find that shorter distances are called for along the north and south lines of the 9.7-acre tract than would have been the case if the field notes for that tract had been arrived at by merely subtracting 100 feet from the distances called for along the north and south lines of the 11.4-acre tract; and this clearly suggests, or is at least sufficient to support an inference, that a new survey was made just in order that the 9.7 acres could be separately and accurately described.

The foregoing considerations, even without the fact last mentioned, are sufficient, we think, to support our conclusion that the deed itself renders certain the fact that the term "right of way" was used in it to denote the land itself; but if we should be mistaken in this view, and if the term was in fact ambiguous, we think there can be no doubt that when taken together all of the matters we have mentioned are amply sufficient to support a finding that the parties to the deed intended the term to denote the land itself rather than a mere easement, and, since the trial was before the court, and no findings of fact were either made or requested, we must presume in favor of the judgment that such a finding was made.

It must be borne in mind that in this instance the grantor railway company not only owned the right-of-way strip in fee, but was itself using it for its own railway purposes; and the advantages to a railway company from owning the fee in its right of way are many. The company's position was quite different, therefore, from that of the ordinary fee owner who initially grants a right of way to a railway company; so different, in fact, that the reasoning that gave rise to the rule enunciated in Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, militates against rather than in favor of giving to the words "right of way," as employed in the subject deed,

the same fixed legal meaning that was said in that case to be their due when employed to describe or to limit the estate granted by an instrument of primary conveyance. It is for this reason, together with the further fact that our courts recognize that the words are often used to denote land, that we have said that the law neither requires us to give the words the fixed meaning of a mere servitude of passage or an easement, nor would justify us in so doing.

The fact that the grantor railway company owned the right-of-way strip in fee and was itself using it for its own railway purposes serves also to distinguish this case from those cited above as being relied upon by appellants, for in each of those cases, with the possible exception of Cantley v. Gulf Production Co., 135 Tex. 339, 143 S.W.2d 912, the grantor held only the servient estate at the time the conveyance was made that gave rise to dispute, and the public or some other held the right of way as a mere easement. Even in the Cantley case the right of way had existed earlier as an easement, and, aside from a variety of other things that are sufficient to distinguish the case from this one, the deed that was there involved was perhaps susceptible of the construction that the grantor either continued to recognize the easement or else intended by the deed to recreate it. It is improbable, therefore, that the presumption that appellants contend must be indulged—the presumption that the grantor railway company intended to convey the fee in the right-of-way strip, reserving only an easement in or over said land—would be or could be indulged, even though we were of the opinion that a contrary intention had not been clearly expressed in the deed. See, Goldsmith v. Humble Oil & Refining Co., 145 Tex. 549, 199 S.W.2d 773; Pewitt v. Renwar Oil Corp., Tex.Civ.App., 261 S.W.2d 904.

■ Appellants' second point is without merit and is also overruled From what we have said in disposing of Point One, it is apparent that we find no conflict between the specific or metes-and-bounds description and the general description, and so the question of whether the one or the other should prevail is not presented.

■■ Appellants' third point is likewise without merit and is overruled. Clearly, the provision of the deed by which the grantor railway company conveyed to R. S. Sterling "all of its royalties, rights, interests and estates in or under" the mineral lease then held by Humble Oil & Refining Company, including "all and every right" it had "in or under said lease," was not intended to convey the oil, gas and other minerals in place, subject to the lease; nor do we think the language of the provision, though broad and general, was of a nature to include the railway company's reversionary estate in the minerals affected by the lease. The reversion or possibility of reverter was not something the lease created or that the railway company held "in or under" the lease, but was an estate that as a matter of law the company retained when the lease vested in the lessee a determinable fee in a part of the oil, gas and other minerals. See, Glenn v. Holt, Tex.Civ.App., 229 S.W. 684; 36 Tex.Jur. 875; also, with reference to the nature of the lessor's estate, Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004, 1006. Such of the company's "royalties, rights, interests and estates in or under" the lease as were conveyed by the deed were dependent upon a continuation of the lease for their existence and they lapsed when the lease did.

No reversible error having been presented, the judgment of the trial court is affirmed.