Edna H. REITER et al., Appellants,

v.

COASTAL STATES GAS PRODUCING COMPANY et al., Appellees.

No. 5513.

Court of Civil Appeals of Texas.

El Paso.

Feb. 20, 1963.

Rehearing Denied April 3, 1963.

Strickland, Wilkins, Hall & Mills, Mission, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, W. P. Hardeman, Houston, L. A. Thompson, Tulsa, Okl., for appellants.

Ewers, Toothaker, Ewers, Elick, Jones & Abbott, Cox & York, McAllen, W. L. Matthews, San Antonio, of counsel, Malcolm McDermott, McAllen, Ralph T. Rawlins, Edinburg, of counsel, for appellees.

FRASER, Justice.

This is a trespass to try title suit instituted by Edna H. Reiter and husband, C. S. Reiter, and Pan American Petroleum Corporation against Coastal States Gas Producing Company, Donna Irrigation District, Hidalgo County No. 1 in Hidalgo County, Texas, and C. O. Foerster, Jr., to recover the west .8 acre out of a six-acre tract located in Hidalgo County, Texas. Shortly before the trial the defendant, C. O. Foerster, Jr., conveyed his interest to Pan American Petroleum Corporation. He filed a disclaimer and was dismissed from the case.

The case was tried before the court without a jury. A take-nothing judgment was rendered against the appellants on July 19, 1960, and the appellants, within the time and in the manner required by law, perfected their appeal to this court.

The parties stipulated that La Blanca Agricultural Company was the common source of title. Appellants claim a fee simple title from this common source, and contend that all the appellees ever had was a mere easement, if anything, and that even so the easement or canal site lay within the confines of the land claimed by appellants. Appellees contend that they had an outright reservation, rather than just an easement, originating from the same common source of title, and that such reservation for right of way for canal purposes actually was intended to, and does lie west of the six acres owned and claimed by appellants. Appellees maintain that the right of way or canal was planned, reserved and actually constructed and lay, and still lies, within Block 224 of the Engelman Resubdivision of Blocks 223–224–225–226B, La Blanca, Donna Irrigation District, Hidalgo County, Texas. Appellees include a map within

their brief illustrating this point. Both sides claim title through various provisions of the statute of limitations. Mrs. Reiter leased her property, to-wit, the six-acre tract which she had received from her father, for oil and gas; and after gas was found on the piece of ground originally used as a right of way by the Donna Irrigation District, this lawsuit resulted. The actual chain of title in each instance is not particularly complicated or voluminous. The actual location of the 8/10 of an acre in dispute here, and the type of ownership—to-wit, easement or fee simple—seems to comprise the main reason for this controversy.

Appellants brought their suit in trespass to try title after the Donna Irrigation District, hereinafter referred to as "Donna", executed an oil and gas lease to the land formerly used by them as right of way, comprising a strip about three miles long and 150 feet wide. As above stated, appellants claim in their lawsuit that the trial court erred in granting a take-nothing judgment because the strip leased by Donna actually lay within the six-acre tract owned by appellants; and secondly that, in any event, regardless of where it was, only an easement had emanated from the common source of title, and Donna could not have owned the land in fee, regardless of where it was located; and finally, appellants contend that they had established title by limitations under the ten-year phase of the statute of limitation law.

We believe that appellee's first counter-point is well taken and decisive of this lawsuit. This point urges that because appellants and their claimed predecessor in title made the map of "Engelman Resubdivision of Blocks 223–224–225–226B, La Blanca" which includes Lot 4, Block 223, a part of their title in various instruments, and as such, descriptive of the six-acre tract claimed by them, that they thereby announced and ratified that this map, with this description of Lot 4, Block 223, is the proper description, and properly describes the

location and dimensions of Lot 4, Block 223, the property claimed by appellants. Massey v. Lewis, Tex.Civ.App., 281 S.W.2d 471 (N.R.E.). Appellees also urge that the Engelman map speaks as an ancient document, inasmuch as it was recorded in 1924 and meets the qualifications for such distinction, and cite McCormick & Ray Texas Law of Evidence, section 1375, p. 204. The chain of title is not very long. It was in 1924 that one T. L. Humble received a deed to the six acres in question from J. C. Engelman, Inc., and about twenty years later, to-wit, in 1944, deeded the same tract to his daughter, Edna H. Reiter who, in 1947, executed an oil and gas lease covering the six-acre tract, which lease was assigned and transferred until it came to ownership in one of the appellants herein. Appellees point out that the mineral lease executed by Edna H. Reiter et vir, December 14, 1947, states as follows:

"* * * being the North (6) six acres, more or less, out of Block 223, same being Lot #4 of the Engelman Resubdivision of Blocks 223-224-225-226B, La Blanca Subdivision * *";

also, that an assignment of this lease used the identical descriptions, and then a Unit Designation by Western Natural Gas Company used substantially the same description, to-wit: "* * * being all of Lot 4 in Block 223 of the Engelman Resubdivision * * *"; and an assignment by Western Natural Gas also described the property as Lot 4, Block 223 of the Engelman Resubdivision. It will therefore be seen that four instruments, executed by appellant Edna H. Reiter and her successors in title to the oil and gas, referred to the land owned by her as Lot 4, Block 223 of the Engelman Resubdivision. From the map above referred to, reproducing this subdivision, it is clear that the canal strip lies west of Lot 4 and is actually between Blocks 223 and 224. Appellees further point out that the on-the-ground dimensions of this lot, portrayed by their exhibit in their brief add up to an acreage of 5.99917, and call our attention to the fact that this is about as close to six

acres as land measurements can come. This point is presented to urge that Lot 4, as laid out and described in the Engelman map or in the map of Engelman Resubdivision, comprises, within a minute fraction, the six acres mentioned in the original deeds; whereas, if the canal strip is included, appellants would have just about half an acre too much. Appellants argue that the map hereinabove referred to was actually made or filed several months after the deed to T. L. Humble by J. C. Engelman, Inc., in 1924. However, we do not think this disposes of the legal theory that when parties have, by their conveyances or assignments, definitely referred to a certain map, and especially one that bears the dignity of an ancient document, they have thereby ratified, adopted and announced that this map shows and proves where their property is, and thereby accept its definition and description as being descriptive of the confines and location of the property claimed. There is also testimony by E. W. Watts that he, as a construction contractor, along with his brother took a contract in 1917 for the building of this northern part of the Donna canal extending up between Blocks 223 and 224, the canal having been staked off by engineer Clark, and that their work was completed in 1919. We think, therefore, without going into further review of the arguments of counsel and testimony, that although T. L. Humble, the original grantee of the actual six-acre tract, actually received his deed several months before the Engelman map was dated and recorded, it must be noted that the description in the deed was to the north six acres of Block 223, and this appears verified by the Engelman map filed several months later and now in evidence. After Humble conveyed this property to his daughter by a description which again refers to Lot 4, Block 223, the daughter, Edna H. Reiter—in 1947, some twenty years later—executed an oil and gas lease using the description that appellees claim fixes her title as described by the Engelman map. This description has been set forth earlier in this opinion, and is found in the oil and gas lease described in appellees' brief as

"P's. Ex. 11". We therefore hold that the description of the six-acre tract owned by Mrs. Reiter was the one appearing in the Engelman map because the description fits this map precisely, both as to dimensions and acreage, excludes the canal strip, and finally Mrs. Reiter herself used the identical description and reference to the Engelman map in her execution of the oil and gas lease, which description was precisely followed in one instance, and substantially followed in two other assignments of said lease. Our holding is based, also, on this act of acceptance and ratification of the thirty year old map by appellants, and their adoption of it as a proper description of the land they own. This lot and block came out of the agreed source of title—the La Blanca Agricultural Company.

■ Appellants contend that Donna never had anything but an easement and therefore did not have any ownership of the strip in question. Appellees answer, and we think successfully, that the original deed from the source of title speaks of reservations of strips of land—one, for example, in 1912 to Mr. Beamer, who transferred it back and then was again the grantee. These early conveyances of the large tract within which the land in controversy is situated, we think, upon study, adequately portray an intention on the part of the grantor to reserve strips of land for canal purposes, describing them as rights of way. The word "easement" creeps into various other documents later, but we think, on the basis of the holding and language in Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451, wherein the court says as follows:

"In the use of the words 'right of way' in the two paragraphs the purpose for which the land is conveyed, the use to be made of it, is indicated. This fact, however, does not change the effect of the conveyance, for the declaration in a deed of the purpose for which land is conveyed or the use to be made of it does not impose a condition upon the title granted; nor does it operate to limit the grant to a mere easement."

that in the original grants by the agreed source of title, both the canal and the rights of way were conveyed and reserved according to the particular instrument involved; as, for example, in a deed from La Blanca to A. F. Hester, in 1904, the language appears: "all those tracts or parcels of land situated in the County of Hidalgo, State of Texas * * *" (a following paragraph says) "the canal, laterals and flumes and right of ways therefor now existing on the following lands, and also any further rights of way that may be required for the purpose of building, extending and maintaining canals, laterals and flumes for the purpose of irrigation, on, across, along and around the following described tracts or parcels of land, to-wit: * * *" This and similar language appearing in various instruments executed by the agreed source of title indicate clearly to us that they intended to, and did, grant and/or reserve strips of land for rights of way to be used as canals. It must be borne in mind that they were not here, so far as the record shows, dealing with a foreign agency or company wishing to put a pipeline or canal across their property and wanting an easement for that purpose. As the record clearly indicates, they were trying to build up a subdivision or area for irrigation and were obviously trying to protect the right of their future operators or owners to have free access to put canals where they needed to; and in some later deeds they actually and carefully reserved definite canal routes and sites. We therefore must reject appellants' position and point, that all appellees ever had was an easement title. Finally, in the conveyance by La Blanca to J. T. Beamer, their intention is clearly shown when they expressly waive and except a certain number of acres wherein is constructed the main canal of the La Donna Canal Company, and state that it is expressly reserved and excepted from such conveyance. Appellees contend

that this language shows the clear intention of the agreed source of title, along with other similar documents.

Appellants also contend that they have successfully shown a ten-year limitation title. It has been well settled that to successfully assert such title possession must be actual, visible, continuous, notorious, distinct and hostile, and of such a character as to indicate an unmistakable assertion of claim of exclusive ownership by the occupant. State v. Heard, Tex.Civ.App., 199 S.W.2d 191, aff'd. 146 Tex. 139, 204 S.W.2d 344. Appellees contend that the record shows that there was no tenant on this tract for a period of six weeks, running from January 5, 1953 to February 14, 1953, which is within the ten-year period. Appellees also contend that various tenants couldn't have helped perfect limitation title because they were only given the right to work Lot 4, Block 223, by Humble and Mrs. Reiter and their representative, D. O. States. Appellees quote Williams v. Fuerstenberg et al., Tex.Com.App., 23 S.W.2d 305, as holding that a tenant cannot assist in the building of a limitation title for a landlord beyond the actual land leased; if he uses other land he is a mere trespasser and guilty of a tortious act that does not help the landlord's claim to such land outside of the original lease or area. It is also true that one who seeks to establish limitations title has the burden of proof. We feel that the nature of the occupancy of several tenant farmers, plus the six-week gap during the ten-year period, defeat the attempt to claim such title. In fact it is stated that Wesley Van Matre, one of the tenants, claims that he pastured some stock on the Donna canal strip, but did so with the permission of the Donna District. We think, therefore, that appellants' attempt to establish ten-year title by limitation was insufficient to meet the strict requirements of the statutes thereunto appertaining.

In conclusion, we feel that we must hold that the location of appellants' property was admitted, accepted, ratified and defined by the Engelman map, which has been in legitimate existence and on record since December 30, 1924. Further, that appellees' title was not, as urged by appellants, a mere easement, but a reservation of strips of land to be used for canal purposes. Therefore, Donna actually owned the land rather than an easement over the same. Further that appellants were not successful in their contention for title by limitation.

For the above reasons, appellants' points are overruled and the judgment of the trial court is affirmed.