Edna H. REITER et al., Petitioners,

v.

COASTAL STATES GAS PRODUCING CO.
et al., Respondents.

No. A–9585.

Supreme Court of Texas.

June 24, 1964.

Rehearing Denied and Dissenting Opinion
Filed Oct. 14, 1964.

Strickland, Wilkins, Hall & Mills, Mission, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, W. W. Heard, Tulsa, Okl., for petitioners.

Malcolm McDermott, William E. York, Ewers, Toothaker, Ewers, Elick, Jones & Abbott, McAllen, W. L. Matthews, San Antonio, Ralph T. Rawlins, Edinburg, for respondents.

NORVELL, Justice.

This is an action in trespass to try title involving .8 of an acre out of the north six acres of Block No. 223 of the La Blanca Agricultural Company Tract out of the Llano Grande and La Blanca Grants in Hidalgo County, Texas, according to the map or plat of said tract which is of record in Volume 1, at page 33, of the Map Records of Hidalgo County, Texas.

The plaintiffs in the District Court were Edna H. Reiter, joined by her husband, C. S. Reiter, and Pan American Petroleum Corporation, the holder of a mineral lease under Mrs. Reiter. The defendants were Donna Irrigation District, Hidalgo County No. 1, and its mineral lessee, Coastal States Gas Producing Co. The trial court rendered judgment for the defendants, which was affirmed by the Court of Civil Appeals. 365 S.W.2d 953.

We reverse the judgments of the courts below and here render judgment that the petitioner-plaintiffs do have and recover of and from the respondent-defendants judgment for title and possession of the .8-acre tract of land in dispute, subject to the easement rights, if any, now held and being used by the Donna Irrigation District.

The controlling issue in this case is whether the Donna Irrigation District owns the .8 of an acre in dispute or is vested with an easement right with reference thereto. This question is in turn controlled by the construction of a deed dated September 23, 1904, executed by La Blanca Agricultural Company to A. E. Hester, Trustee. Upon the date mentioned La Blanca owned a tract containing some 13,000 acres, including the .8 of an acre now in dispute. A portion of the 13,000 acres was being irrigated and it was contemplated that additional acreage would be placed under irrigation. The purpose of the conveyance to Hester, Trustee, was to place the lands, easements and other properties used for irrigation purposes in the name of the trustee, and thus separate the title to the irrigation properties from the title to the lands to be irrigated. Provision was made for easement rights to be exercised in the future by the parties operating the irrigation system and their successors. The deed recited that La Blanca Agricultural Company had "granted, sold and conveyed and by these presents does grant, sell and convey unto the said A. F. Hester, Trustee, of the County of Cameron and State of Texas, all those certain tracts or parcels of land situated in the County of Hidalgo, State of Texas, with the improvements thereon, and more particularly described as follows:

"Ten (10) acres of land conveyed to T. J. Hooks by Lon C. Hill by deed dated the 8th day of December 1902, and recorded in book 'K', on pages 199 and 200 of the deed records of said Hidalgo County, and conveyed by said T. J. Hooks, to 'La Blanca Agricultural Company' by deed dated June 23rd, 1903, and recorded in book 'K' on pages 240 et seq., of the deed records of said Hidalgo County, and all the improvements thereon, consisting of boilers, engines, pump tools, buildings, canals, laterals and any and all other improvements of whatsoever kind not herein mentioned.

"Also the canal, laterals and flumes, and rights-of-way therefor now existing and on the following lands, *and also any further rights of way that may be required for the purpose of building, extending and maintaining canals, laterals and flumes for the purpose of irrigation,* on, across, along and around the following described tracts or par-

cels of land to wit: * * *." [Italics supplied.]

[Here follows a list of deeds to La Blanca Agricultural Company under which said company acquired the 13,000 acres of land commonly known as the La Blanca Tract.]

The pertinent portion of the Hester deed is the provision relating to *"further rights of way* that may be required for the purpose of building, extending and maintaining canals, laterals and flumes for the purpose of irrigation."

This deed conveyed no then-presently existing legal title to any tracts or parcels of land under that portion of the deed which referred to "further rights of way as may be required" for the purpose of extending and maintaining canals and laterals. No specific tracts or parcels of land were or could have been described at that time.

In Texas Electric Railway Company v. Neale, 151 Tex. 526, 252 S.W.2d 451 (1952), relied upon by respondents, this Court was concerned with conveyances of presently existing legal titles and not equities. This is true of all the cases discussed by the Court in that opinion. The specifically described tract is the basic condition for the application of the Neale rule that when a definite tract is conveyed, a legal fee simple title will pass, although in later portions of the deed, the proposed use of the tract is set out.

In Right of Way Oil Company v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A.,N.S., 268 (1913), the granting clause provided that the grantors "do hereby *grant, sell and convey* unto the East Texas Railway Company, for the purpose of constructing, operating and maintaining its railroad, *the right of way*, two hundred feet in width, over and upon the above-described tract of land."

In the Neale case, above mentioned, the granting clause of the deed provided that grantors " * * * in consideration of One Dollar to me (sic) in hand paid and the benefits which will accrue to my other property by reason of the construction of the Interurban Railway hereinafter mentioned, do by these presents grant, sell and convey unto [certain named] Trustees of the Southern Traction Company, their successors and assigns, the following described piece or parcel of land, to wit: [Here follows metes and bounds description]."

In *Neale,* Mr. Justice Smedley, writing for this Court, discussed and analyzed the line of cases headed by Right of Way Oil Co. v. Gladys City Oil, etc., Co., supra, and the decisions following Calcasieu Lumber Company v. Harris, 77 Tex. 18, 13 S.W. 453 (1890), and Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265 (1932). It was said:

"Generally stated, the rules announced by these decisions are: First, that, as in the Right of Way Oil Company case, a deed which by the terms of the granting clause grants, sells and conveys to the grantee a 'right of way' in or over a tract of land conveys only an easement; and second, that, as in the Calcasieu Lumber Company case and in the Brightwell case, a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or paragraph of the deed the land conveyed is referred to as a right of way."

In *Neale,* the Court held that the conveyance was ruled by the Calcasieu-Brightwell line of decisions. There was a grant of a tract of land followed by a specific description thereof. A legal title was conveyed. This is true of every case in the Calcasieu-Brightwell line. The Neale case does not purport to overrule the Gladys City case and while the distinction between the two lines of authorities may seem a fine one, it should be remembered that Mr. Justice Smedley was not writing upon a clean slate but drawing a line of demarcation between decided cases. This case falls within the

rule of the Gladys City case. The grant was to "further rights of way that may be required." The Hester instrument contains no specific description of the *tract* to be occupied by these "further rights of ways," and hence the conveyance is outside the Calcasieu-Brightwell rule of construction.

■ It may be further said that we are dealing with equitable rights which are controlled by equitable principles. The primary function of the Donna Irrigation District is to supply the landowners within its boundaries with irrigation water. It must have canals and laterals, but easements are amply sufficient for its legitimate purposes.

The respondents also contend that Mrs. Reiter cannot recover because certain deeds under which she attempts to deraign her title from La Blanca Agricultural Company (the common source) contain defective descriptions. The primary authority relied upon by them is Wooten v. State, 142 Tex. 238, 177 S.W.2d 56 (1944). There are certain factual differences between *Wooten* and this case. They lie primarily in the circumstance that Mrs. Reiter's tract was carved out of a larger tract of definite configuration, e. g., a block designated on a recorded map. Because of other considerations, however, we need not and do not determine if the rule of *Wooten* applies to the descriptions in this case, nor are we required to re-examine such rule in order to decide this cause.

On July 21, 1924, La Blanca Agricultural Company conveyed the north 19.09 acres of Block 223 of the La Blanca tract to J. C. Engelman, Inc., which was apparently acting as a sales agent and title conduit for La Blanca. On the next day, July 22, Engelman executed its conveyance of the north six acres to T. L. Humble, who thereafter conveyed such property to his daughter, Mrs. Reiter. It is asserted that because these deeds contained the words "more or less" following the designation of the north 19.09 acres and the north 6 acres, no title

passed out of La Blanca Agricultural Company. Neither La Blanca nor Engelman says these conveyances are defective, but the point is raised by the Donna Irrigation District as an alternative to its claim of fee simple title under the 1904 deed to Hester, Trustee. The Donna Irrigation District was a complete stranger to the La Blanca-Engelman-Humble and Reiter transactions. La Blanca and Engelman have been paid a consideration for the conveyance to Humble and have never attempted to repudiate it in any way.

■ Mrs. Reiter is entitled to recover under the doctrine of prior possession. It is made abundantly clear from the testimony of Mr. A. L. Cramer, the Secretary and General Manager of J. C. Engelman, Inc., that he considered that Mr. Humble had purchased the north six acres of Block 223. Humble paid one hundred fifty dollars per acre for the land, half cash and half represented by notes secured by a vendor's lien. The notes have been paid. Neither he nor his daughter has abandoned possession or claim to the north six acres of Block 223.

The statement of facts discloses the following with reference to the examination of Mr. Cramer as a witness:

"Q.: Now then, after you sold that land to Mr. Humble, did you put him in possession of it?

"A.: Yes, sir.

"Q.: And what did he do, if anything, to improve the land?

"A.: He contracted with us for clearing the native brush from the land, and that was done very shortly after he purchased it. And he paid us for that work, that clearing.

"Q.: Mr. Cramer, what else, if anything, did Mr. Humble do to improve this property, besides the clearing he had you do?

"A.: Later, and I don't remember just how long after he purchased.

the property, he built a little house on it and lived there for several years."

None of this evidence was contradicted. There was nothing indefinite about the acreage of the tract which Mr. Cramer considered his company had conveyed to Mr. Humble. Humble purchased and paid for a six-acre tract—the north six acres of the block. The Donna Irrigation District had no functioning laterals or irrigation facilities upon the property which was in the brush and wholly undeveloped. The entry by Donna in order to provide irrigation water for the tract was made after Cramer, the Engelman manager, had placed Humble in possession. It would be difficult to imagine a better case of "prior possession" than that presented by the petitioners here.

 Undoubtedly the Donna Irrigation District as successor in interest to A. E. Hester, Trustee, had an equitable right to locate a right of way (an easement) over the north six acres of Block 223 in order to transport irrigation water, but when Humble acquired the six-acre tract here involved, the land was in the brush. Brush land is not irrigated and there was no operative canal or lateral on the tract. If, prior to 1924, some species of a lateral had been constructed (which later fell into disuse), the entry of the Donna Irrigation District would be referable to its legal rights under the Hester deed. This deed conveyed only an equitable right to locate a right of way. The exercise of this right could not affect Mrs. Reiter's claim under the doctrine of "prior possession." The fact that a tract of land is subject to an easement such as one for an electric power line or a water conduit does not render the tract immune from the operation of the doctrine of prior possession. Here again the proper construction of the deed to Hester as conveying an equitable right only is decisive.

In Watkins v. Smith, 91 Tex. 589, 45 S.W. 560 (1898), this Court was confronted with a situation which is similar in many respects to that presented here. "The plaintiff [Watkins] claimed title under one S. G. Tomlinson, and exhibited a chain of title from Tomlinson to himself. In order to show title in Tomlinson, he introduced * * * sundry deeds from parties claiming to be heirs of the original grantee of the certificate, but failed to make proof that they were such heirs." It could perhaps be argued that in this state of the record, title was shown to be vested in the original grantee or his unknown heirs, and that it was not shown that the plaintiff, Watkins, had acquired the title of the original grantee. A similar argument is urged here. However, in Watkins v. Smith, the Court held that the case was one for the application of the doctrine of prior possession. This Court, speaking through Chief Justice Gaines, said:

"We are thus brought to the question whether, under the established facts of this case, the plaintiff was entitled to recover by reason of his possession of the premises at the time of defendant's entry. In Keys v. Mason, 44 Tex. 140, Chief Justice Moore says: 'It is true, the possession of the defendant entitles him to a judgment against the plaintiff, unless the latter shows a prima facie title. He does this when he deraigns title from the sovereignty of the soil down to himself; or if he shows title out of the government, and subsequent possession for sufficient length of time to toll the right of entry, or merely a prior possession to that under which the defendant claims with a regular chain of title connecting himself with such possession,' etc. The remark as to prior possession was made merely by way of argument, and is a dictum; but it is, in our opinion, a correct statement of the rule. The rule there announced has been frequently applied in this court. House v. Reavis, 89 Tex. 626, 35 S.W. 1063; Duren v. Strong, 53 Tex. 379; Caplén v. Drew, 54 Tex.

493; Parker v. Railway Co., 71 Tex. 133, 8 S.W. 541; Express Co. v. Dunn, 81 Tex. 85, 16 S.W. 792; Linard v. Crossland, 10 Tex. 462. But it is ingeniously argued that the rule is not applicable to a case where the defendant enters without actual force under a claim of right, for the reason that one who takes possession under claim and color of title cannot be deemed a naked trespasser. It is true that the proposition is most usually announced under the form that prior possession is prima facie evidence of title against a naked trespasser or a mere intruder. But we have been cited to no case, nor have we found any, in which it has been decided that possession is not evidence of title against any wrongdoer. It is not a rule of property. It is a mere rule of evidence, and is founded upon the principle that, since ownership is a usual concomitant of possession, it is a reasonable prima facie inference that the possessor of property is the owner of such property. The inference is no less cogent when the trespasser claims title without showing that he has the title than when he intrudes without any claim whatever. Upon this immediate point, we regard the case of Duren v. Strong, above cited, as being directly in point. In that case the defendants claimed under a chain of conveyances which they introduced in evidence, but failed to show a conveyance to the first grantor from the patentee of the land. The court, in the opinion, declined to discuss any other question save that of the prior possession of the plaintiff, and said: 'The plaintiff having clearly established a prior peaceable possession never abandoned, and the defendants having failed to show any right to disturb that possession, the judgment in favor of plaintiff should stand.' See, to the same effect, Elofrson v. Lindsay (Wis.) [90 Wis. 203] 63 N.W. 89; Jacks v. Dyer, 31 Ark. 334."

See also, Alexander v. Gilliam, 39 Tex. 227 (1873); Land v. Turner, Tex.Sup., 377 S.W.2d 181 (1964); and Balli v. McManus, Tex.Civ.App., 311 S.W.2d 933, ref., n. r. e. (1958), and the authorities therein cited and discussed.

In Bradshaw v. Ashley, (1901) 180 U.S. 59, 21 S.Ct. 297, 45 L.Ed. 423, the Supreme Court of the United States considered a factual situation similar to that of Watkins. v. Smith, supra. The plaintiff Ashley endeavored to prove a record title to certain lots in the City of Washington through mesne conveyances from the original owners. He also gave evidence tending to show a title by adverse possession for twenty years. However, the plaintiff submitted his case upon proof of prior possession, contending that as he had been in actual, continuous and undisturbed possession of the lots when ousted, he was entitled to recover against an intruder without further proof of title. The trial court instructed the jury that if they found that the plaintiff and his grantors had been in possession and were ousted by the defendant who had no title, the plaintiff was entitled to recover. The defendant contended that this charge was erroneous in that it ran counter to the rule that the plaintiff must recover on the strength of his own title and not upon the weakness of that of the defendant, and "that the mere fact of prior possession of the premises by the plaintiff, without evidence of any legal title to them (sic), was not sufficient to allow a recovery as against the defendant in possession, even though the defendant had no title himself and did not connect himself with the legal title."

The Supreme Court held that plaintiff's acts of possession in connection with the vacant and unimproved city lots in dispute were similar to those usually exercised by owners of such species of property. The plaintiff and his grantors had collected rent from tenants on the lots. At one time there was a building on the property which had been removed with plaintiff's consent. The plaintiff claimed full ownership of the premises and there was no evidence of

abandonment. Although the defendant made some claim of title based upon deeds which did not connect with the record title, the Court held that the position of defendant was essentially that of an intruder.

The Court held that it was immaterial whether plaintiff's claimed record title was valid or not as he was "entitled to recover on proof of his prior possession, where the defendant is simply an intruder and has no color of title." The Court quoted from the opinion of Chief Baron Pollack in Davison v. Gent, 38 Eng.L. & Eq. 469, as follows:

"[I]f a party has a right to maintain an action of ejectment, by reason of his possession, and attempts also to show title, and discloses a flaw in it, he may still recover by reason of his possession. He may say, 'I claim to recover both by reason of my title and my possession; and failing in one I will rely upon the other.' His prior possession is good in any event, as against a trespasser entering without right."

As to the rule of "prior possession" the Supreme Court of the United States further said in the Bradshaw case:

"An examination of the authorities will, as we think, render it clear that the rule in regard to possession and the presumption arising therefrom was correctly stated, and it will appear that it is not inconsistent with the acknowledged rule in ejectment that the plaintiff must recover upon the strength of his own title, and not upon the weakness of the title of the defendant. The question is, What presumption arises from the fact of possession of real property? Generally speaking, the presumption is that the person in possession is the owner in fee. If there be no evidence to the contrary, proof of possession, at least under a color of right, is sufficient proof of title. Therefore, when in an action of ejectment the plaintiff proves that on the day named he was in the actual, undisturbed, and quiet possession of the

premises and the defendant thereupon entered and ousted him, the plaintiff has proved a prima facie case, the presumption of title arises from the possession, and, unless the defendant prove a better title, he must himself be ousted. Although he proves that some third person, with whom he in no manner connects himself, has title, this does him no good, because the prior possession of the plaintiff was sufficient to authorize him to maintain it as against a trespasser, and the defendant, being himself without title, and not connecting himself with any title, cannot justify an ouster of the plaintiff. This is only an explanation of the principle that the plaintiff recovers upon the strength of his own title. This title by possession is sufficient, and it is a title, so far as regards a defendant who only got into possession by a pure tort, a simple act of intrusion or trespass, with no color or pretense of title."

The prior case of Sabariego v. Maverick, (1888) 124 U.S. 261, 8 S.Ct. 461, 31 L.Ed. 430, was also referred to. In stating a policy consideration for the rule, it was said in Maverick:

"This rule [of prior possession] is founded upon the presumption that every possession peaceably acquired is lawful, and is sustained by the policy of protecting the public peace against violence and disorder."

There can be little doubt that the rule followed in practically all the American jurisdictions is in accord with the Supreme Court's holding in Bradshaw v. Ashley. See Annotation accompanying the report of the Bradshaw case in 45 L.Ed. 423. The well-considered Texas cases likewise hold that prior possession will support a recovery in trespass to try title under the facts of this case. In House v. Reavis, (1896) 89 Tex. 626, 35 S.W. 1063, Mr. Justice Brown speaking for the Court said:

"The prima facie case made in favor of the plaintiffs in this case by proof of

actual prior possession of the property was as strong and cogent evidence of title in them as was the evidence of common source in the case cited above, and it would necessarily require as high a degree of proof to defeat the title thus established as it would to defeat that which was established by the claim of both parties under a common source of title. The presumption which is raised in favor of the title of the possessor of land necessarily includes the presumption that the state had parted with the title to the land to some one, and that the possessor had acquired that title. Otherwise, the presumption of title in fee could not exist. It therefore follows, as a necessary and logical conclusion, that to prove that such title had passed out of the state establishes no fact which is not included in the presumption of title in the plaintiff; that is, that some person had acquired title from the state prior to that of the plaintiffs, or that the plaintiffs themselves had acquired it from the state. And in the latter case the question could scarcely arise, because the plaintiffs, having a perfect title direct from the state, would not fail to produce it. The presumption of title in the possessor is indulged in favor of quieting the land titles of the country, and to support the possession and right of those who, under a claim of right, hold such possession, but whose chain of title is not complete in all of its parts. If the position taken in this case be established as the law, then the object and purpose of such a presumption which has so long prevailed in common-law courts would be defeated, and the title of every possessor of real estate whose chain of title was not perfect would be placed at the mercy of those who, either by force, fraud, or strategy, could secure the possession, and thus place the actual and rightful possessor upon proof of a regular chain of title from the government, and, in case of failure to do so, could

defeat his right by simply showing that the title had passed out of the state without showing any claim of title in himself."

There are some inconsistencies in the Texas decisions relating to the doctrine of "prior possession" which arise from varying interpretations of the statements that the rule of "prior possession" is one of evidence and not of property (or estoppel), and that it is a reasonable *prima facie* inference that the possessor of property is the owner thereof.

This situation was mentioned in Land v. Turner, 377 S.W.2d 181 at page 188 (Tex. 1964), but a decision on the matter was not deemed necessary. Hence the Court deliberately did not choose between the two lines of cases. A choice is deemed appropriate here.

Ordinarily a prima facie inference or presumption may be rebutted and the next question encountered relates to the species or kind of evidence which must be produced to rebut the inference. Assuming that the plaintiff is relying upon prior possession, proof of title in the defendant unquestionably operates to rebut the inference of ownership arising from plaintiff's possession. On the other hand, proof that a grant has issued from the sovereign coupled with a showing that some third person holds the record title under such grant is insufficient to rebut the inference. This is the direct holding of House v. Reavis, supra, which was cited with approval in Watkins v. Smith, supra. These cases support the proposition that a break in plaintiff's paper chain of title leaving an apparent outstanding title in a third person does not destroy plaintiff's case under the doctrine of prior possession. The brief opinion rendered in Bates v. Bacon, 66 Tex. 348, 1 S.W. 256 (1886), is somewhat cryptic. If it be construed as holding that mere proof of the issuance of a patent which necessarily would show paper title in a third person is sufficient to rebut the prima facie inference of title growing out of

plaintiff's possession, then such holding is contrary to House v. Reavis and cannot be sanctioned. Under such holding the doctrine of prior possession would possess no vitality and would become merely a still-born notion. If there be no showing of the issuance of patent, it could be said that the record shows that paramount title is in the State and consequently plaintiff has no title. If a patent be shown, it could be said that title is shown to be vested in the grantee and hence plaintiff is shown to be without title.

There are cases which hold that the inferences of title in the possessor, i. e., that title has issued from the sovereign or that the paper title of the record holder (if any be shown) has been acquired by the person in possession, may be rebutted by showing that title is outstanding in a third party.

■ The doctrine of "prior possession" should be a simple one as it is designed to maintain public peace and order. In essence it proceeds upon the theory that one in possession should not be disturbed unless it be by one having a better title. In Bradshaw v. Ashley, supra, which undoubtedly represents the prevailing American rule, the United States Supreme Court categorically stated:

"[T]he presumption of title arises from the possession, and, unless the defendant prove a better title, he must himself be ousted. Although he proves that some third person, with whom he in no manner connects himself, has title, this does him no good, because the prior possession of the plaintiff was sufficient to authorize him to maintain it as against a trespasser, and the defendant, being himself without title, and not connecting himself with any title, cannot justify an ouster of the plaintiff."

In the early case of Christy v. Scott, 14 How. 282, 14 L.Ed. 422 (1852), the plaintiff was in possession of land claiming under a Mexican state grant. The defendant asserted that this grant was invalid in that the land was within the twenty frontier leagues bordering on the United States and approbation of the central government was not shown. The Supreme Court of the United States held that one without title "cannot enter on a person actually seised, and eject him, and then question his title, or set up an outstanding title in another."

In speaking of Christy v. Scott, it was said in Alexander v. Gilliam, 39 Tex. 227, 235:

"This was a case from this state, and the doctrine herein laid down is that a mere trespasser or intruder cannot enter upon the lands in the possession of another and eject him therefrom, and then question his title, or set up an outstanding title in another."

In House v. Reavis, supra, the Court found it unnecessary to pass directly upon the question of whether defendant by proof of title in a third person could defeat the claim of one in possession of land. The Court said, "There are strong reasons and good authority to sustain the position that he could not, if it were necessary to assert it in this case." Among the authorities cited was Christy v. Scott, supra.

We perceive of no good or practical reason why the general American and English rule represented by Bradshaw v. Ashley, Christy v. Scott, and Alexander v. Gilliam, and endorsed in principle by House v. Reavis and Watkins v. Smith should not be followed in Texas. We approve the holding in such cases upon the issue of prior possession. Expressions contained in former opinions of this Court, the Commission of Appeals or the Court of Civil Appeals which may appear contrary to the holdings herein set forth are disapproved.

■■ To return to the facts of this case, we find that Donna Irrigation District under a proper construction of the 1904 Hester deed acquired an easement right only which cannot be metamorphosed into a fee simple claim. Galveston, Harrisburg and San

Antonio Ry. Co. v. McIver, Tex.Civ.App., 245 S.W. 463, wr. dism. (1922). The rights of the District being restricted to an easement at most, its claims over and above such right are wholly insupportable. Even though it be considered that Mrs. Reiter's paper title be defective, it is nevertheless conclusively shown that Mr. Humble paid a valuable consideration for the property and that he went into possession thereof. This possession under the law carries with it the presumption of ownership against one having no title.

There is one other matter which may be briefly mentioned. The opinion of the Court of Civil Appeals contains a number of references to a map designated as the "Engelman Resubdivision of Blocks 223–224–225–226 B" of the La Blanca tract, which is recorded in Volume 3, at page 3 of the Map Records of Hidalgo County, Texas. This map was filed for record by Engelman, Inc., on December 30, 1924, some five months after it had executed its deed to T. L. Humble. In the deeds from La Blanca to Engelman, Inc., and from Engelman, Inc., to Humble and from Humble to Mrs. Reiter, the map reference was to Vol. 1, page 33 of the Hidalgo County Map Records. This map shows no subdivisions of Block 223 of the La Blanca tract. Mr. Cramer, the general manager of Engelman, Inc., in his testimony referred to no mapped resubdivision of Block 223. His testimony was as follows:

"Q.: Mr. Cramer, did you know Mr. T. L. Humble?

"A.: I did know him, yes. We sold a a piece of land to Mr. Humble, and he lived on it for several years. I knew him then.

"Q.: Now, we have a map here that has been introduced here, and Lot 223 is shown on this map—what piece of property did you sell Mr. ——

"A.: The north six acres of Lot 223.

\* \* \* \* \* \*

"Q.: Did he pay you for it?

"A.: Yes, sir, he did.

"Q.: How much did he pay you for it?

"A.: A hundred and fifty dollars an. acre.

"Q.: Was that all cash?

"A.: No, he paid half cash and half in five vendor's lien notes, pay-- able annually.

"Q.: And they have all been paid?

"A.: They have all been paid.

"Q.: Now then, after you sold that: land to Mr. Humble, did you put him in possession of it, Mr. Cramer?

"A.: Yes, sir."

Under these circumstances, it is difficult to understand how the filing of the Volume 3, page 3 map could operate to defeat Mrs. Reiter's title. The point need not be labored.

The judgments of the courts below are reversed and judgment here rendered as above indicated.

GRIFFIN and SMITH, JJ., dissenting.

SMITH, Justice.

The dissenting opinion delivered June 24,. 1964, is withdrawn, and the following substituted therefor.

I respectfully dissent. The Court has. passed upon the question of prior possession, and has held that plaintiffs have established prior possession; and, therefore, have title to the .8 of an acre involved in this case. Prior possession was argued in the Court of Civil Appeals in connection with the points. that title was proved to be with the plaintiffs under the ten-year statute of limitations. The contention was that the plaintiffs had prior possession of "the North 6 acres of Block 223." No proof was made that plaintiffs had established title to the .8 of an acre

involved. In fact, the first metes and bounds description of this .8 of an acre appears in plaintiffs' petition. All through plaintiffs' briefs plaintiffs seek to get away from the void description contained in the deeds in their chain of title. The briefs describe the Reiter tract as being the North 6 acres, whereas the deeds in plaintiffs' chain of title describe their land as being "the North six (6) acres, *more or less,* of Block Number Two Hundred Twenty Three (223) * * *."

I contend that there is no evidence in this record showing prior possession. It cannot be said, as a matter of law, that the plaintiffs have title under the theory of prior possession or any other theory. This case was tried to the Court without the aid of a jury. A take-nothing judgment was properly entered against the plaintiff.

A plaintiff in a trespass to try title suit may recover by (1) proving a superior title out of a common source; (2) proving title by limitations; and (3) proving prior possession, and that the possession had not been abandoned. See Land v. Turner, Tex., 377 S.W.2d 181 (1964). Since plaintiffs have asserted all three of these independent grounds of recovery as a basis for their claim to the .8 of an acre, I shall discuss these grounds separately.

*Superior Title Out of a Common Source*

In a trespass to try title suit, where the parties agree as to a common source, it is incumbent upon the plaintiff to discharge the burden of proof resting upon him to establish a superior title from such source. See Rule 798, Texas Rules of Civil Procedure; Davis et ux. v. Gale, 160 Tex. 309, 330 S.W.2d 610 (1960).

By the entry of the "take-nothing" judgment against the plaintiffs the trial court held that the plaintiffs failed to discharge this burden. The plaintiffs are before this court urging that the trial court and the intermediate appellate court erred in holding against them on the issue of superior legal title.

The principal reason that the plaintiffs have failed to establish legal title is that description of the land in three deeds in their chain of title is fatally defective, and, therefore, void.

The description of the land in the deed from the common source to J. C. Engelman, Inc., dated July 21, 1924, is as follows:

"The north nineteen and nine-hundredths (19.09) acres, *more or less,* of Block Number Two Hundred Twenty-three (223), according to the subdivision of what is known as the La Blanca Tract out of the Llano Grande and La Blanca Grants, according to the plat thereof recorded in Volume 1, page 33, of the Map and Plat Records of Hidalgo County, Texas, said map or plat being herein referred to for greater certainty of description."

Next in plaintiffs' chain of title is a deed from J. C. Engelman, Inc., to T. L. Humble, dated July 22, 1924, which describes a tract of 6 acres, *more or less,* out of the J. C. Engelman, Inc., 19.09 acres, *more or less,* the particular description being:

"The north six (6) acres, *more or less,* of Block Number Two Hundred Twenty-three (223), according to the subdivision of what is known as the La Blanca Tract out of the Llano Grande and La Blanca Grants, *according to* the plat thereof, recorded in Vol. 1, page 33, of the Map and Plat Records of Hidalgo County, Texas, said map or plat being herein referred to for greater description."

The third deed in plaintiffs' chain of title from the common source is a deed from T. L. Humble to the plaintiff, Edna H. Reiter, dated August 26, 1944. This deed describes the land conveyed as follows:

"The North six (6) acres, more or less, of Block Number Two Hundred Twenty-three (223), according to the subdivision of what is known as the La Blanca Tract out of the Llano Grande and La Blanca Grants, ac-

cording to the plat thereof recorded in Vol. 1, page 33, of the Map and Plat Records of Hidalgo County, Texas."

The words "more or less" render the description of the land attempted to be conveyed uncertain and indefinite to the extent that the land cannot be identified. Therefore, the deeds are void as legal conveyances of land. Plaintiffs seek to disregard the words "more or less" used in the description of the lands involved and desire to treat the descriptions as if they read: The North 19.09 acres of Block 223, and the North 6 acres of Block 223. Thus, plaintiffs would treat the words "more or less" as though they were added to an estimate of the quantity of land following a particular description. The words "more or less" cannot be ignored. The deeds in the instant case do not designate the land as the North 19.09 acres of Block 223, and the North 6 acres of Block 223. The words are not attached to an estimate of quantity following a particular description of the land. Since there is no particular description of the land, the acreage, or quantity becomes important in ascertaining what land was intended to be conveyed.

The rules announced in the case of Wooten v. State, 142 Tex. 238, 177 S.W.2d 56 (1944), are controlling on the question. In that case, two tracts of land were involved. One of the tracts was described as the North part of Tract 10, Section 13, Blk. G–17, H. P. Melton Survey, containing 60 acres of land, *more or less;* and the description given of the other tract was that it is the North end of Tract 10, Section 11, Block G–17, Thos. F. Main survey, containing 140 acres of land, *more or less.* The repondents in that case, just as the plaintiffs in the instant case, sought to disregard the words "more or less" used in the description of the two tracts. In holding against such contention, this court said:

"In the instant case, however, the words 'more or less' are not attached to an estimate of quantity following a particular description of the land; and

since there is no particular description, the acreage, or quantity, becomes important in ascertaining what land is intended to be condemned. There is nothing to identify or define the north part of one tract and the north end of the other tract except the statement of the acreage, and that statement is qualified, made indefinite and uncertain by the addition of the words, 'more or less'. The use of these words destroys the value of the statements of the acreage for the purpose of description. The substance of the description is: 60 acres, more or less, off the north end or part of one tract, and 140 acres, more or less, off the north end or part of the other tract. Is it 60 (and 140) acres or more than 60 (and 140) acres or less than 60 (and 140) acres? If more, how much more? If less, how much less? In our opinion, the description of the land contained in the petition for condemnation, in the award and in the judgment, is so indefinite and uncertain that the land cannot be identified with reasonable certainty. It follows that neither the commissioners nor the county court acquired jurisdiction."

There is no material distinction between the Wooten case and the instant case. The "more or less" description in both instances simply described nothing and conveyed nothing. The reasonable certainty of description required for a valid conveyance is such that a surveyor could go upon the land and mark out the land designated. See Parker v. Fort Worth & D. C. Ry. Co., 84 Tex. 333, 19 S.W. 518 (1892). No surveyor could go upon the land and mark out with certainty the location of the south boundary line of the north six acres, *more or less,* of Block 223. As stated in Norris v. Hunt, 51 Tex. 609, 614:

"The true rule, as deduced from the authorities, seems to be that this description should be so definite and certain upon the face of the instrument itself, or by other writing referred to,

that the land can be identified with reasonable certainty."

This rule was followed in the Wooten case. However, plaintiffs seek to distinguish the Wooten case on the ground that the description of the land in that case makes no reference to any other writing in aid of the description, whereas, the description in the instant case specifically says that the tract is 19.09 acres, more or less, and 6 acres, more or less, "according to the subdivision of what is known as the La Blanca Tract out of the Llano Grande and La Blanca Grants, according to the plat thereof recorded in Vol. 1, page 33, of the Map and Plat Records of Hidalgo County, Texas." In making this contention, the plaintiffs are seeking to do exactly what was held could not be done in the Wooten case. The map showing Block 223 was introduced in evidence. This map of Block 223 does not show where the south boundary of "the North 6 acres, *more or less*" is to run. Plaintiffs base their entire argument on the premise that 6 acres, not 6 acres, *more or less,* can be located on the ground with the aid of the map. Since the words, *"more or less"* were used as a part of the description, it is unnecessary to decide in this case whether the description would be sufficient but for the use of those words. See Wooten v. State, supra. The use of these words as a part of the description destroys the value of the statements of the acreage for the purpose of description.

Plaintiffs rely upon the case of Zeppa v. Houston Oil Co. of Texas, Tex.Civ.App., 113 S.W.2d 612, (1938), wr. ref. In that case the description involved was *"the East 100 acres"* out of a larger boundary definitely described by metes and bounds. There is nothing in the holding in this case which runs counter to either the holding in the instant case or the Wooten case, supra. The respondents in the Wooten case relied upon cases similar to the Zeppa case, but this court in distinguishing the cases cited pointed out that in none of those cases was the specification of the

number of acres intended to be conveyed qualified by the words "more or less."

To recover in trespass to try title, the plaintiff must recover upon the strength of his own title. Hejl v. Wirth, 161 Tex. 609, 343 S.W.2d 226 (1961). Where the parties stipulate common source, the burden rests upon the plaintiff to connect each party with the common source, and to establish a superior title from such source. See Bosse v. Cadwallader, 86 Tex. 336, 24 S.W. 798; Davis, et ux. v. Gale, supra. Plaintiffs failed to discharge their burden of proving superior title out of La Blanca, the common source.

### Prior Possession

The Court holds that plaintiffs are entitled to judgment for title and possession of the .8 acre in question because they have proven prior possession. The trial court found that plaintiffs had failed to prove prior possession. The Court holds that a deed from La Blanca to Hester, in defendants' chain of title, only conveyed to Hester an easement for canal purposes. I contend that the deed conveyed a fee simple title, instead of an easement. If I am correct, then the question of prior possession is not in the case. In order to clarify my position, I start by setting out portions of the 1904 Hester deed:

"Know all men by these presents; That the La Blanca Agricultural Company * * * has granted, sold and conveyed and by these presents does grant, sell and convey unto the said A. F. Hester, Trustee, of the County of Cameron and State of Texas, all those certain tracts or parcels of land situated in the County of Hidalgo, State of Texas, with the improvements thereon, and more particularly described as follows:

1) [Then follows the description of a 10-acre tract.]

2) "Also the canal, laterals and flumes, and rights-of-way therefor

now existing on the following lands, and also any further rights-of-way that may be required for the purpose of building, extending and maintaining canals, laterals and flumes for the purpose of irrigation, on, across, along and around the following described tracts or parcels of land to wit: * * *. [Then follows the description of several tracts.]

3) "And also along and over the following described tracts or parcels of land which were conveyed to 'La Blanca Agricultural Company' by the following named persons to wit:—" [Then follows the description of land which includes the land in dispute.]

The principal question on this point is the same as that which was presented to this court for decision in the case of Texas Electric Ry. Co. v. Neale, 151 Tex. 526, 252 S.W.2d 451 (1952). Did the deed convey to the grantee merely an easement, that is, the right to use the land for a right of way, or did it convey the title in fee?

In the Neale case, this court recognized that there are two lines of authorities, but clearly distinguished the two and then held that the Neale case was in harmony with the line of cases holding that the deed under consideration conveyed the title in fee rather than a mere easement. What was said in the Neale case in 1952 is equally applicable to this case. In Neale, the Court after stating that the question of whether a deed conveyed merely an easement or a fee title had been before the Court many times, said:

"There are two lines of authorities, the one represented by Right of Way Oil Co. v. Gladys City Oil etc., Co., 106 Tex. 94, 157 S.W. 737, 51 L.R.A., N.S., 268, and the other by Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S.W. 453, and Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265. Generally stated, the rules announced by these decisions are: First, that, as in the Right of Way Oil Company case, [106 Tex. 94, 157 S.W. 739] a deed which by the terms of the granting clause grants, sells and conveys to the grantee a 'right of way' in or over a tract of land conveys only an easement; and second, that, as in the Calcasieu Lumber Company case and in the Brightwell case, a deed which in the granting clause grants, sells and conveys a tract or strip of land conveys the title in fee, even though in a subsequent clause or paragraph of the deed the land conveyed is referred to as a right of way.

"It is our opinion, after careful consideration of the deed and the decisions, that the case is ruled by Calcasieu Lumber Co. v. Harris, 77 Tex. 18, 13 S.W. 453, and Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265, rather than by the Right of Way Oil Company case. In the case last mentioned the granting clause of the deed granted and conveyed 'the right of way, two hundred feet in width, over and upon the above-described tract of land', whereas the granting clause in the deed here under construction grants, sells and conveys to the grantee 'the following described piece or parcel of land'. It does not purport to convey merely a right of way or merely an easement. There do appear in the deed words which show the purpose for which the grant is made, but those words do not undertake to reduce or debase what has been granted from a fee title to a mere easement."

The Court should recognize, as it did in the Brightwell case, supra, that the decision made in the Calcasieu Lumber Company case "has become a rule of property under which titles and securities of immense value have been acquired in this state, and it should not now be disturbed or changed." This is especially true where, as here, the

plaintiffs have wholly failed to prove a record title. The argument that the defendants abandoned the canal has no basis in fact. The failure to have water in the canal at a certain time cannot have the effect of destroying the provisions of the La Blanca-Hester deed which clearly show that a tract or parcel of land was conveyed upon which to build a canal.

In the present case, as in the Neale case, supra, La Blanca granted, sold and conveyed "all those certain tracts or parcels of land," which are described therein. The La Blanca-Hester deed does not purport to convey merely a right of way or an easement. The "tracts or parcels of land" described in the deed include not only the land described as acreage, but also land described as canals. A canal for carrying water is real estate. Mudge v. Hughes, Tex.Civ.App., 212 S.W. 819 (1919) no wr. hist.

That part of the granting clause in the above deed which refers to future rights of way that may be required for the purpose of irrigation on, across, along and around the following described tracts or parcels of land was a conveyance of an equitable title to such lands as might later be required and selected to be used as a canal. Upon such selection being made by Hester or his successors (defendants), legal title to such property became vested in them, superior to the rights of any subsequent purchasers of said land after the deed was recorded in 1904. See Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066 (1938). This case, in principle, stands for the proposition that where a grantor conveys to a grantee the right to select smaller tracts out of a larger definitely described boundary, the grantee becomes the equitable owner of such tracts, and upon exercise of his right of selection, he becomes vested with legal title to the selected parcels. Where the instrument granting such right of selection has been recorded, as here, then all subsequent purchasers of tracts out of the described lands are charged with constructive notice of such right of selec-

tion in the first grantee, and take subject thereto. In the present case, La Blanca intended to give to Hester the right to specific tracts for canal purposes, such tracts to be selected out of the larger, definitely described boundaries as the need for such canals arose. Inasmuch as defendants' predecessor acquired fee title, rather than just an easement for canal purposes, plaintiffs cannot recover said land by proving prior possession, and that the possession had not been abandoned.

In trespass to try title the plaintiff has the burden of proving prior actual possession of the property in litigation, which possession is exclusive and peaceable, to initiate "prior possession." In the light of the record in this case it cannot be said, as a matter of law, that plaintiffs' predecessor T. L. Humble, acquired such exclusive use of the .8 acre in dispute. The testimony raised an issue of fact as to "prior possession" and the trial court resolved the issue against the plaintiffs.

This being so, it is unnecessary to unduly lengthen this dissent with a discussion of the Court's position that "a break in plaintiffs' paper chain of title leaving an apparent outstanding title in a third party does not destroy plaintiffs' case under the doctrine of prior possession." My silence as to this matter in no respect is to be construed as implying consent to the Court's position in this regard.

### Title by Limitation

The holding of the trial court denying plaintiffs a recovery under their plea of the five-year statute of limitations of Texas is not before this court.

Plaintiffs' remaining contention that the evidence establishes their title under the ten-year statute of limitations, Article 5510, Vernon's Annotated Civil Statutes is without merit.

It is well settled that in order to establish title under the ten-year statute of limitations, possession must not only be actual,

but also visible, continuous, notorious, distinct, hostile and of such a character as to indicate unmistakably an assertion of claim of exclusive ownership in the occupant. See Heard et al. v. State et al., 146 Tex. 139, 204 S.W.2d 344 (1947). Plaintiffs' claim is based, in part, on possession and use of the property by tenants. In this regard, the law is well settled that a tenant cannot assist in the building of a limitation title for a landlord beyond the actual land leased. See Williams v. Fuerstenberg et al., Tex.Com.App., 23 S.W.2d 305. With these general rules in mind, we consider plaintiffs' limitation claim.

After the deed from Engelman, Inc., to T. L Humble, father of plaintiff Reiter, was executed in 1924, Humble went into possession of the "north six acres" of Block 223. The only evidence in the record, which indicates that Humble actually used the *specific* .8 acre in question during the time he lived on this land, came from the witness, Mr. R. M. Hughes, who lived to the south of the "Humble tract." According to Mr. Hughes, Humble used the western part of the tract for farming "for a long time." However, there is no evidence as to what constituted "a long time." While the record is not clear, it appears that the western end of Block 223 was completely enclosed by fences around 1934. Wesley Van Matre, Humble's only tenant, testified that he began working the land in 1941, and worked it each year until 1949. According to Mr. Van Matre, he pastured cattle on the enclosed .8 acre during these years, but further testified as follows:

"Q. And isn't it a fact that other neighbors put stuff in this canal strip out there, and used it for grazing?

"A. Well, before I went there they did.

"Q. In other words, the District made no objection to letting you graze stuff on there, as far as they were concerned?

"A. Yes, Sir.

"Q. In other words, you did it with their permission and consent?

\* \* \* \* \* \*

"A. Yes, we done it with their consent."

Humble moved off the land some time before 1943. Thereafter, on August 26, 1944, he executed the deed to plaintiff Reiter, wherein he conveyed the "north six acres more or less," of Block 223. Plaintiff Reiter never came onto any part of this land from the time of execution of this deed, until after this suit was filed in 1958. Therefore, any adverse possession by her would have to be through tenants.

As noted above, Wesley Van Matre worked the "Humble tract" from 1941–1949. Upon leaving the land, John Van Matre moved on the land as plaintiff Reiter's tenant. He testified that he commenced running cattle across the .8 acre "as soon as Wesley had left." There was nothing to put defendants on notice that John Van Matre was making any greater claim to the land in question than had his brother Wesley, who, as noted above, testified he used the .8 acre with defendant's *consent*. In fact, John Van Matre stated that he made use of the land "under the same circumstances" that his brother Wesley had.

John Van Matre ceased to make use of the "Humble tract" in early January, 1953. Thereafter, for approximately six weeks, no person used or occupied said land. On February 14, 1953, plaintiff Reiter's husband made a verbal lease of the "Humble tract" to R. M. Hughes, without any reference as to boundaries. Mr. Hughes did not maintain the fences around the western part of Block 223. He testified that he made *no use* of the .8 acre in dispute until 1956, at which time the canal area was leveled off. He did begin raising crops on the leveled canal strip in this year, and continued to do so down to 1958, when this suit was filed. However, even during the time of this use, Hughes did not claim to be holding the .8

acre for plaintiff Reiter as the *exclusive* owner thereof. He stated that he was asserting whatever interest plaintiff Reiter might have in the canal strip (the .8 acre) as one member of the public, as a property owner in the Irrigation District, "like anybody else along the canal." It is clear from all of the foregoing that plaintiffs' attempt to establish ten-year title by limitation is not sufficient to meet the strict requirements of the statutes.

The judgments of the trial court and the Court of Civil Appeals should be affirmed.

GRIFFIN, J., joins in this dissent.